UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BARBARA JOHN,                          :
                                       :
        Plaintiff,                     :
                                       :
v.                                     :     Case No. 3:14-CV-01484 (RNC)
                                       :
CITY OF BRIDGEPORT, ET AL.,            :
                                       :
        Defendants.                    :
                                       :

RULING AND ORDER

Plaintiff Barbara John brings this case against her employer, the City of Bridgeport, along with a group of individual defendants, alleging that defendants discriminated against her because of her age, gender and race.  Defendants have moved to dismiss (ECF No. 12), arguing that Ms. John has failed to exhaust one of her claims and did not effect service of process in a timely manner.  For reasons that follow, defendants' motion is denied.

I. Background

Plaintiff Barbara John teaches physical education in the public school system in Bridgeport, Connecticut.  She asserts that in 2012, she applied for a position as Director of Physical Education.  Bridgeport's Board of Education did not hire her, instead selecting a younger white male.  Ms. John further asserts that she had applied for the same position in 2006 but was not hired on that occasion either.  She alleges that these denials

1

were motivated by her age, gender and race.

Ms. John brings claims against the City of Bridgeport and the City's Board of Education, along with Superintendent of Schools Paul Vallas, Deputy Superintendent Theresa Carroll, and Sandra Kase, the employee who interviewed Ms. John in 2012. She is also proceeding against unnamed "agents, administrators, managers, supervisors, [and] officials of the Defendant Board." ECF No. 1, at 9. Ms. John brings claims under Title VII, 42 U.S.C. §§ 1981, 1983, 1985 and 1986, the Connecticut Fair Employment Practices Act (CFEPA) and Connecticut common law (for intentional infliction of emotional distress and breach of contract).

Ms. John filed suit on October 8, 2014. Under Federal Rule of Civil Procedure 4(m), she was obliged to serve the defendants within 120 days – that is, on or before February 5, 2015. The parties agree that the named defendants were not served until March 27, 2015, forty-nine days after Rule 4(m)'s deadline. The unnamed defendants, John Doe, Jane Roe, John Roe and Jane Roe, still have not been served. As to these defendants, service is more than five months tardy.

II. Discussion

Defendants seek dismissal on two grounds. First, they argue that Ms. John's CFEPA claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because she has not

obtained a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities (CHRO). Second, they argue that Ms. John's complaint should be dismissed without prejudice in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(5) because the named defendants were served late, and the unnamed defendants have not been served at all.[1]

A. Exhaustion

---

[1]In their reply to plaintiff's opposition to the motion to dismiss, defendants argue that the Court should disregard plaintiff's opposition brief (ECF No. 24). This is appropriate, they urge, because plaintiff missed multiple deadlines and deviated from the Court's procedural rules in connection with the filing. Plaintiff's opposition was due on May 8, 2015, but plaintiff took no action on defendants' motion until May 29, when she sought an extension of time in which to respond. This request was granted and the filing date extended to June 11, but plaintiff missed this deadline too. Plaintiff moved for and was granted another extension of time; counsel explained that his computer system had failed on June 2. Plaintiff filed an opposition on June 17 but failed to serve it on defendants.

The Court has discretion to ignore late-filed papers. DiStefano v. Law Offices of Barbara H. Katsos, P.C., No. 10 Mc. 564 (JS), 2011 WL 2446318, at *2 (E.D.N.Y. June 15, 2011). But the delay in this case, though by no means negligible, is not so egregious as to warrant penalizing Ms. John for counsel's errors. See, e.g., id. (opposition papers seven months tardy). Moreover, plaintiff has at least advanced a reason for the delay, even if it is incomplete (counsel's computer trouble having arisen some three weeks after opposition papers were due). See id. ("[C]ounsel, in addition to not establishing excusable neglect, fails to provide any excuse or explanation for the delay."). The Court's decision on the motion to dismiss will bear seriously on Ms. John's rights. Except in the most extreme cases it is best to render such a decision based on more information, not less. Counsel's failure to respond appropriately to the motion is unfortunate, but Ms. John should not be held to answer for it. Accordingly, the following discussion incorporates the arguments put forth in plaintiff's opposition.

Defendants first argue that Ms. John's CFEPA claim should be dismissed because she fails to allege that she obtained a Release of Jurisdiction from the CHRO. See Conn. Gen. Stat. § 46a-101(a) (complainant may not bring a CFEPA action without obtaining a Release of Jurisdiction). But Ms. John apparently did obtain a Release of Jurisdiction; a copy is appended to her opposition papers. ECF No. 25-1. Defendants' reply does not address the exhaustion argument, so it appears they no longer wish to pursue it. At all events it must be rejected.

B. Failure to Serve

Defendants' second argument is that the complaint should be dismissed without prejudice because plaintiff did not serve any defendants until forty-nine days after the expiration of Rule 4(m)'s 120-day window.[2]

Rule 12(b)(5) permits a party to seek dismissal of an action for insufficient service of process. Under Rule 4(m), service must be effected within 120 days of the complaint's filing. If a plaintiff fails to make service within this window but shows good cause for the failure, the court must "extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). Whether a plaintiff has shown good cause depends on a weighing of "plaintiff's reasonable efforts to effect service and the

---

[2]As discussed above, the unnamed defendants have yet to be served. This issue is discussed separately.

4

prejudice to the defendant from the delay." AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt., LP, 197 F.R.D. 104, 108 (S.D.N.Y. 2000).  A party seeking an extension for good cause "bears a heavy burden of proof." Naglieri v. Valley Stream Cent. High Sch. Dist., No. 05 Civ. 1989 (TCP), 2006 WL 1582144, at *3 (E.D.N.Y. May 26, 2006).

If a plaintiff who has failed to effect service cannot demonstrate good cause, the court may dismiss the action without prejudice.  Fed. R. Civ. P. 4(m).  But it is not obliged to do so.  The court may instead extend the time for service.  Zapata v. City of New York, 502 F.3d 192, 193 (2d Cir. 2007).  When determining whether to grant an extension instead of dismissing the case, the court should consider whether 1) the statute of limitations would prevent plaintiff from refiling, effectively converting the dismissal to dismissal with prejudice; 2) the defendant had actual notice of the claims prior to being served; 3) the defendant tried to conceal the defect in service; and 4) the defendant will be prejudiced if an extension is granted. Songhorian v. Lee, No. 11 Civ. 36 (CM), 2012 WL 604323, at *4 (S.D.N.Y. Dec. 3, 2012).  When the statute of limitations would bar the plaintiff from refiling, the court must carefully "weigh[] the impact that a dismissal or extension would have on the parties." Zapata, 502 F.3d at 197.

Absent a showing of good cause, whether to dismiss or extend

the time for service rests in the court's discretion.  The Court

of Appeals "will not disturb a district court's dismissal absent

some colorable excuse raised by the plaintiff" (though this does

not mean a plaintiff is obliged to identify a "colorable excuse"

at the district level).  Id. at 198 n.7.

*Good Cause.*  The first question is whether Ms. John has

demonstrated good cause for her failure to timely serve the

defendants, a matter to be determined by weighing "plaintiff's

reasonable efforts to effect service" against "the prejudice to

defendant from the delay."  Askin Capital Mgmt., 197 F.R.D. at

108.  She has not.

Plaintiff identifies two reasons for not serving the

defendants within the allowable period.  The first is that she

was "unable to locate one of the defendants critical to

prosecution of her case, Dr. Paul Vallas, who has left the

jurisdiction."  ECF No. 25, at 4.  Plaintiff's counsel therefore

"decided" that he would undertake to serve the rest of the

defendants (except the unnamed ones) only after locating Dr.

Vallas in March 2015.  Id.  This explanation falls well short of

meeting the "heavy burden" of establishing good cause.  Naglieri,

2006 WL 1582144, at *3.  With respect to Dr. Vallas, that

plaintiff was "unable to locate" him because he left Connecticut

tells the Court nothing about whether plaintiff undertook the

required "reasonable efforts" to find him and effect service.

6

Askin Capital Mgmt., 197 F.R.D. at 108.  Perhaps counsel searched
high and low for Dr. Vallas; perhaps he did nothing.  The Court
does not know, so it cannot make the required finding.  Compare
Naglieri, 2006 WL 1582144, at *3 (no good cause when counsel did
not know where defendant lived and made no attempt to find her),
with Emerald Asset Advisors, LLC v. Schaffer, 895 F. Supp. 2d
418, 427 (E.D.N.Y. 2012) (good cause when counsel "detailed
substantial efforts that have been made to locate and serve" the
defendant).  I must likewise reject the suggestion that plaintiff
was justified in failing to serve the rest of the defendants
because counsel could not locate Dr. Vallas, and it was
convenient to serve all defendants at once.

The second explanation for deficient service is that Ms.
John, who is "contractually obligated" to pay all costs of
litigation, has been ill and "has used her limited resources to
pay costs associated with illness."  ECF No. 25, at 5.  This
explanation is also insufficient, even assuming a client's
failure to pay litigation costs could in theory constitute good
cause.[3]  Courts are disinclined to find good cause on the basis

---

[3]Intentionally missing a deadline – and risking dismissal of
an action – due to a client's failure to pay costs raises a
question of ethics.  Connecticut Rule of Professional Conduct
1.16(5), which governs the conduct of attorneys before this
Court, see D. Conn. L. R. Civ. P. 83.2(a)(1), permits a lawyer to
withdraw from the representation of a client if "the client fails
substantially to fulfill an obligation to the lawyer regarding
the lawyer's services and has been given reasonable warning that
the lawyer will withdraw unless the obligation is fulfilled."

of mere assertions that counsel found it inconvenient or difficult to effect service in a timely manner.  See, e.g., Gibbs v. Imagimed, LLC, No. 11 Civ. 2949 (ER), 2013 WL 2372265, at *2 (S.D.N.Y. May 30, 2013) (no good cause when counsel asserted that he was preoccupied with the care of his sick wife and two daughters).  Plaintiff's counsel is obliged not merely to state why service was not made, but to explain why, in the circumstances, service was not possible despite reasonable efforts.  He has not done so.

With regard to the issue of prejudice resulting from the delay in effecting service, defendants point out that plaintiff's

---

Qualifying circumstances can include refusal to pay the lawyer's fee.  But Rule 1.3 demands "reasonable promptness and diligence" during the pendency of the representation, and the commentary to Rule 1.5 states that a lawyer must not make a fee agreement "whose terms might induce the lawyer improperly to curtail services for the client."  These rules, read together, say that a lawyer may be permitted to withdraw when his client fails to pay, but he may not simply stop working.  See In re Yan, 390 Fed. Appx. 18, 20-21 (2d Cir. 2010) (attorney who, having accepted initial retainers from clients, intentionally failed to file briefs on behalf of those clients who failed to pay additional fees); Bennett v. Mukasey, 525 F.3d 222, 223 (2d Cir. 2008) ("[W]ithdrawal requires compliance with several obligations to the client, and Rosenthal made no attempt to withdraw, much less to comply with withdrawal obligations.  Instead, despite a retainer agreement and acceptance of an initial fee payment, he neglected his obligations to his client and permitted his client's appeal to be defaulted and dismissed.  Of course, a retained lawyer can either pursue contractual remedies to collect unpaid fees or seek leave to withdraw, but he cannot abandon his client for lack of a promised payment nor neglect his professional responsibilities until such payment has been made."); 1. Cyc. of Fed. Proc. § 1:80 (3d ed. 2008).  Accordingly, a client's failure to pay a fee is not good cause for her lawyer's failure to make timely service.

claim is based in part on conduct that occurred in 2006.  This conduct was already long past at the time the period for service elapsed, and it receded a further forty-nine days before service was effected.  Some slight prejudice may have resulted from this delay, and prejudice may fairly be assumed when a defendant is sued after the statute of limitations has run (an issue discussed in more detail below).  See Kalra, 2009 WL 857391, at *6.  But any defendant can make a generalized assertion that the passage of time associated with plaintiff's failure to serve will inhibit its ability to put on a defense, and the forty-nine day delay in this case is a minor slice of the nine years that have passed since 2006.  Accordingly, I conclude that the delay has caused defendants little prejudice.

This slight degree of prejudice, however, is to be balanced against plaintiff's reasonable efforts to effect service.  The record indicates that plaintiff made virtually *no* effort to make service within 120 days of filing.  I therefore conclude that plaintiff has failed to demonstrate good cause, and the Court is not obliged to extend the period for service.

*Discretionary Extension.*  Ms. John having failed to show good cause, the question is whether a discretionary enlargement of the service period is appropriate.  This inquiry depends on four factors: whether 1) the statute of limitations would prevent plaintiff from refiling, effectively converting the dismissal to

dismissal with prejudice; 2) the defendant had actual notice of the claims prior to being served; 3) the defendant tried to conceal the defect in service; and 4) the defendant will be prejudiced if an extension is granted.  Songhorian, 2012 WL 604323, at *4.

The parties do not address the first factor.  It seems very likely, however, that at least some of Ms. John's claims will be barred if the Court dismisses her complaint without prejudice. For instance, Ms. John was required to file suit under Title VII within 90 days of receiving a release of jurisdiction from the EEOC, see Jordan v. Forfeiture Support Assocs., 928 F. Supp. 2d 588, 598 (E.D.N.Y. 2013), and Ms. John obtained her release in July 2014.  Dismissal for failure to effect service "leaves the plaintiff in the same position as if the action never had been commenced," 4 Fed. Prac. & Proc. § 1056 (3d ed. 2008), so a dismissal here could be dispositive as to the Title VII claim. As for the other claims, I am unable to say whether dismissal will effectively be with prejudice.  For instance, the statute of limitations for § 1983 claims is three years.  Dontigney v. Paramount Pictures Corp., 411 F. Supp. 2d 89, 91 (D. Conn. 2006). Some of the conduct underlying Ms. John's § 1983 claim appears to have occurred in 2012, but exactly when in 2012 is not clear.  I therefore conclude that this factor favors the plaintiff.

The second factor is whether defendants had actual notice of

10

the claims prior to service.  Nothing in the papers suggests they did.  Thus, this factors favors the defendants.

The third factor is whether the defendants tried to conceal the defect in service.  They did not – they raised it promptly in their motion to dismiss.

The fourth factor is whether the defendants will be seriously prejudiced if the Court grants an extension.  As discussed above, if defendants have suffered any prejudice from the forty-nine day delay, it is slight.  Plaintiff's failure to timely serve defendants delayed the case for less than two months, not for years.  See, e.g., Klinker v. Furdiga, No. 5:12 Civ. 254, 2013 WL 1705106, at *4 n.5 (D. Vt. Apr. 19, 2013) (delay insufficient to show prejudice because "the case was only a couple months older than it would have been if plaintiff hadn't been given this extension" (internal quotation marks omitted)).

The case law also suggests that prejudice may be assumed when a defendant is sued outside the statute of limitations, Kalra, 2009 WL 857391, at *6, and here at least some of plaintiff's claims would be time-barred if asserted in a new complaint.  But this is an odd way to look at things.  The first factor in the four-factor test breaks for the plaintiff if dismissal would result in a time-barred claim.  Can it be right that the fourth factor breaks for the *defendant* if dismissal would result in a time-barred claim?  If so, this test is

seriously flawed – a plaintiff who wins at the first step will always see her gain cancelled out at the last step.  A sensible way to navigate this tension is to concede that although a defendant forced to defend against an old claim may suffer some prejudice, a plaintiff who is barred from suing through no real fault of her own suffers a great deal more prejudice. Accordingly, the Court acknowledges that some prejudice to defendants is present but concludes it is so slight that this factor favors the plaintiff.

That adds up to two factors for each party.  For several reasons, in all the circumstances it is appropriate to resolve this tie in favor of plaintiff, enlarge the time for service and permit the case to proceed.  The first is the strong federal policy in favor of resolving claims on the merits: Ms. John should not lose all or even some of her claims because counsel erred.  See Mason Tenders Dist. Counsel Pension Fund v. Messera, No. 95 Civ. 9341 (RWS), 1997 WL 221200, at *5 (S.D.N.Y. Apr. 1, 1997).  This is especially so when, as in this case, counsel's missteps have occurred over a relatively short period of time and plaintiff has not been warned about the possible consequences of continuing the representation.  The second is that although counsel has been careless, he has not blithely flouted the Court's rules.  Service was forty-nine days late, but it occurred; opposition papers were tardy, but they were filed; the

reasons for delay are not altogether convincing, but they are reasons.  See Zapata, 502 F.3d at 199 ("Zapata . . . has advanced no cognizable excuse for the delay."); Bogle-Assegai, 470 F.3d 498, 508 (2d Cir. 2006) ("Bogle-Assegai conceded that those defendants had not been properly served in their individual capacities; but she offered no excuse whatever for the defective service.  Further, despite having been informed that Appleton and Newton objected to the improper service at least as early as July 2003, and despite the continued pendency of the lawsuit until March 2005, Bogle-Assegai never attempted to remedy the defect by asking the district court to extend her time to effect personal service.").  Accordingly, the time for service will be extended.

One issue remains.  Plaintiff still has not served any of the unnamed defendants.  This must occur quickly.  These defendants are administrators in the Bridgeport school system, where plaintiff works, and their identities should be ascertainable without undue difficulty.  Rule 4(m) provides that if a defendant is not served within 120 days of the complaint's filing, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Accordingly, plaintiff is directed to effect service on the unnamed defendants on or before July 29, 2015.

III. Conclusion

13

Accordingly, the motion to dismiss is hereby denied, and plaintiff is hereby ordered to effect service on the unnamed defendants on or before July 29, 2015.

So ordered this 15th day of July, 2015.

_____/s/_____
                Robert N. Chatigny
           United States District Judge

14