Exhibit # 5

**Kase, Sandra**

| | |
|---|---|
| **From:** | Siegel, Marlene |
| **Sent:** | Monday, December 17, 2012 1:50 PM |
| **To:** | Kase, Sandra; sandykase@aol.com; Jaeger, Kathleen |
| **Subject:** | FW: Director Athletics ADMINISTRATIVE JOB OPENING.doc |

**From:** Cochran, Dan
**Sent:** Thursday, March 22, 2012 4:58 PM
**To:** * BOE All
**Subject:** Director Athletics ADMINISTRATIVE JOB OPENING.doc

Please post in all schools and locations

# ADMINISTRATIVE JOB OPENING

**BRIDGEPORT PUBLIC SCHOOLS**
**Paul Vallas, Superintendent**
**45 Lyon Terrace, Room 203**                                    Bridgeport, CT 06604

## PLEASE POST

Posting Date: March 23, 2012      Closing Date: April 2, 2012

## Director of Athletics, Health and Physical Education

**Reports To:**   Director of Adult Education

**RESPONSIBILITIES:**

- Provide leadership for the design, organization, implementation and evaluation of instruction, curriculum and professional development in athletics, health and physical education, grades Pk-12.
- In conjunction with the Director of Adult Education, plan, organize and coordinate the district's athletic activities and events, in conformance with applicable policies, laws and regulations and within the limits of the established budget.  Supervise the selection and performance of athletic coaches in the district's schools.
- Provide expertise in the selection and implementation of district wide health and physical education instructional programs, aligned to standards.
- Lead the development of a district K-12 curriculum in health and physical education and monitor any continual updates needed.
- Monitor student assessment data to help identify staff training needs and coordinate planning of professional development opportunities, within the Office of Adult Education, under the direction of the Director of Adult Education; and in conjunction with the Deputy Chief Academic Officer.
- Work closely with building principals to determine specific professional development needs and implementation support at the building level; help to create learning communities focused on goals aligned to district standards.
- Provide support and technical assistance to principals and school staff through routine visits, regularly scheduled meetings, and responses to requests for assistance.

BBOE000001

- In providing support at the school level, develop and foster a culture of collaborative and reflective practice among teachers; differentiate support for teachers based on assessment data.
- Oversee the planning and delivery of professional development to health and physical education teachers in schools.
- Help plan and schedule opportunities to strengthen home-school connections and inform parents and community about the district's athletics, health and physical education programs.
- Participate in the planning and organization of intervention programs in health and physical education, based on district assessments of learning needs of students.
- Prepare and maintain all appropriate records and reports athletics, health and physical education programs.
- Implement and monitor district procedures to ensure compliance with state and federal laws and regulations.
- Perform other duties, as assigned by the Director of Adult Education.

## REQUIREMENTS:

- Connecticut certification as an intermediate supervisor (092) and Connecticut certification in health and physical education
- Connecticut certification as a coach
- Masters Degree in health or physical education or related field
- Successful supervisory experience
- Successful experience as an athletic coach and/or coaching supervisor
- Minimum five years successful teaching experience in health and/or physical education
- Evidence of effectiveness in improving health and physical education at the school and/or district level, including a record of successful outcomes in delivery of instructional support through student assessment and professional development.
- Ability to effectively implement and manage budgets and personnel
- Demonstrated knowledge of current trends and research in health and physical education
- Excellent oral and written communication skills
- Excellent organizational and multi-tasking skills
- Demonstrated ability to work harmoniously and effectively with teachers, administrators, parents and community groups
- Demonstrated proficiency in the use of technology for communication and delivery of instruction
- Evidence of diplomacy, flexibility, creativity and perseverance

This is a Group _II_ position.  Salary range for 2011-12 is M.S. $__112,213____ to Ph.D. $__132,765____.

Posting Date: March 23, 2012          Closing Date: April 2, 2012

**If interested in applying, please send an e-mail, with the position specified in the subject line, cover letter, resume and references to:  Lissette Colon, Chief of Staff to the Superintendent, at LCOLON@bridgeportedu.net.**

"It is the policy of the Bridgeport Board of Education not to discriminate on the basis of race, color, sex, sexual orientation, marital status, religion, age, national origin, ancestry, physical disability, present or past mental disorder, mental retardation or learning disability, in any of its educational programs, activities or employment practices."

"The Bridgeport Board of Education is an Affirmative Action/Equal Opportunity Employer."

## **<u>PLEASE POST</u>**

BBOE000002

## INTERVIEW QUESTIONS

Position:    Director of Health and Physical Education
             Bridgeport School District

1. Tell us about yourself and explain why you are the best candidate for this position.

2. Describe your role in ensuring that the health and physical education standards in our schools k-12 are implemented.

3. Tell us how you would communicate, educate and train key personnel in our schools to provide quality health and physical education programs for all of our students.

4. The oversight of all physical education programs and activities are a major responsibility of the district's Director of Health and Physical Education. How would you ensure quality programs in our district schools?

5. What are the qualities you would look for in an athletic coach? What would be your role in supervising the coaches and how would you hold them accountable for high performance?

6. With district budgets becoming more and more constrained, how would you manage your resources to provide equity and access to sports for all students.

7. Is there anything else that you would like to tell us about concerning how you view your role in this director's position?

8. Any other comments or other information that you would like to share with us today.

# OFFICE OF HUMAN RESOURCES

CITY HALL • 45 LYON TERRACE • ROOM 310
BRIDGEPORT, CONNECTICUT 06604

CAROLE PANNOZZO
Executive Director of Human
Resources

SHARON PIVIROTTO
Evaluation Staff Mediator

KATHIE SOCHACKI
BEST District Facilitator



TIMOTHY McNAMARA
Human Resources Assistant

KRISTEN REILLY
Human Resources
Coordinator

LAMAR BOSTIC
Program Assistant/
Certified Staff

MARISOL GARCIA
Program Assistant

VERA COCCO
Clerical Assistant

November 30, 2009

Neil Kavey
379 Szast Drive
Fairfield, Connecticut 06824-4055

Dear Mr. Kavey,

This is just a reminder that your **Professional 044,068** certification that you are working under or hold expired/expires on **January 31, 2010**. All necessary paperwork to renew your certificate should be directed to the Office of Human Resources for signature before mailing to the State Certification Office. At this time, I also encourage you to review the expiration dates of any other certifications that you may hold.

State Statutes prohibit anyone from teaching without a valid certification in their endorsement area. Please call Lamar Bostic or Marisol Garcia at 275-1042 to inform Human Resources of the status of your certification. In addition, please send a copy of your certification to the Office of Human Resources, 45 Lyon Terrace, Suite 310, Bridgeport, CT 06604, when you are in receipt of it. If you have already submitted your paper work to renew your certification, please disregard this letter.

Thank you.

Sincerely,

*Carole Pannozzo*

Carole Pannozzo
Executive Director of Human Resources

CCP: lab

Cc:   Principal
      File

**PLEASE SEND A COPY OF CERTIFICATION TO THE OFFICE OF HUMAN RESOURCES.**

BBOE000004

# OFFICE OF HUMAN RESOURCES

CITY HALL • 45 LYON TERRACE • SUITE 310
BRIDGEPORT, CONNECTICUT 06604

CAROLE PANNOZZO
Executive Director of Human
Resources

SHARON PIVIROTTO
Evaluation Staff Mediator

KATHIE SOCHACKI
BEST District Facilitator

TIMOTHY McNAMARA
Human Resources Assistant

KRISTEN REILLY
Human Resources
Coordinator

LAMAR BOSTIC
Program Assistant/
Certified Staff

MARISOL GARCIA
Program Assistant

DANIELLE LOMBA
Clerical Assistant



April 1, 2010

Neil Kavey
379 Szost Drive
Fairfield, Connecticut 06430

Dear Mr. Kavey,

This is just a reminder that your **Initial 092** certification that you are working under or hold expired/expires on **June 30, 2010**.   All necessary paperwork to renew your certificate should be directed to the Office of Human Resources for signature before mailing to the State Certification Office.  At this time, I also encourage you to review the expiration dates of any other certifications that you may hold.

State Statutes prohibit anyone from teaching without a valid certification in their endorsement area. Please call Lamar Bostic or Marisol Garcia at 203-275-1042 to inform Human Resources of the status of your certification.    In addition, please send a copy of your certification to the Office of Human Resources, 45 Lyon Terrace, Suite 310, Bridgeport, CT  06604, when you are in receipt of it. *If you have already submitted your paper work to renew your certification, please disregard this letter.*

Thank you.

Sincerely,

*Carole Pannozzo*

Carole Pannozzo
Executive Director of Human Resources

CCP: lab

Cc:    Principal
        File

**PLEASE SEND A COPY OF CERTIFICATION TO THE OFFICE OF HUMAN RESOURCES.**

OFFICE OF HUMAN RESOURCES
CERTIFICATION TRACKING

Date: _7 - 14 - 10_

Name: _Neil A. Kavey_

Address: _315 Szost Dr. 3.02_
_Fairfield, Ct. 06824_

Phone #: _(203)_

Expiration Date of Certification: _6/30/10_

Type of Form: _092 Intern_

**How would you like Human Resources to handle THIS FORM?**

_Return to me by mail_
_High Horizon   1/30/10_

BBOE000006



**ED 183**
REV. 7/03
C.G.S. 10-145
C.G.S. 10-145d, P.A. 03-168

# CONNECTICUT STATE DEPARTMENT OF EDUCATION
## Bureau of Educator Preparation and Certification
### P.O. Box 150471 – Room 243
### Hartford, CT  06115-0471

www.state.ct.us/sde

## APPLICATION FOR RENEWAL OF CONNECTICUT INITIAL EDUCATOR CERTIFICATE

1. All applicants must complete Part I. Employing district must complete Part II if applicant is employed under the Initial Educator Certificate to be renewed.
2. Enclose a **fee of $200** (includes NONREFUNDABLE $50 application fee) in the form of a money order, cashier's check or certified bank check payable to "Treasurer, State of Connecticut." **(Renewal of an adult education certificate requires a $100 fee.)**

## PART I:  PERSONAL INFORMATION (Print all information in dark ink and in uppercase letters.)

KAVEY
LAST NAME

WEIL                                                              A          M
FIRST NAME                                                       MI        GENDER (M/F)

- 1.955
SOCIAL SECURITY NUMBER                          BIRTH DATE (Month-Day-Year) – Required

379   SZOST   DRIVE
ADDRESS (Street)                                                              (Apt #)

FAIRFIELD
(City)

CT   06824 -                          FORMER LAST NAME(S)
(State)      (Zip Code)                _____

                                       _____

PHONE  203 -                          Race/Ethnicity  1. Native American
(Home)                                                2. Asian/Pacific Islander
                                                      3. Black
203 - 576 - 7807          (Optional)   4. White
(Work)                                                5. Hispanic

E-MAIL ADDRESS  nkaveyoBridgeporteodunet

Endorsements on Initial Educator Certificate              092
for which renewal is requested (see attached list).       Endorsement Codes

**(continued)**

*Information on this application is subject to disclosure pursuant to the Freedom of Information Act.*

BBQLE0B0D07

**ED 183**

PART I continued: (PERSONAL INFORMATION)

1. Have you served for a Connecticut board of education* under this Connecticut Initial Educator Certificate? If you answer "YES" to Question 1, the employing district MUST complete Part II of this form.  ☐ YES  ☒ NO

2. Have you served as a teacher, administrator or special services staff member for a period of three years within the last 10 years in a Connecticut approved nonpublic school, or out of state in a public or approved nonpublic school? List state(s) and board(s) of education _____  ☐ YES  ☒ NO

3. Have you ever been convicted of **any** crime, excluding minor traffic violations?  ☐ YES  ☒ NO

4. Have you ever been dismissed for cause from any position?  ☐ YES  ☒ NO

5. Have you ever surrendered a professional certificate, license, permit or other credential (including, but not limited to, an education credential); had one revoked, suspended, annulled, invalidated, rejected or denied for cause; or been the subject of any other adverse or disciplinary credential action?  ☐ YES  ☒ NO

**NOTE:** If you answer "YES" to questions 3, 4 or 5, you must attach a signed statement of explanation. If there are multiple incidents within each question, you must list and explain each separately. Submit **official** copies of court or administrative record(s), including disposition of each case.

**APPLICANT ATTESTATION:** I certify that the information provided by me on this application and any accompanying documents contains no material misrepresentations, falsifications or omissions and that all of the information given by me is true, complete and accurate. I understand that all application and accompanying information may be verified and that any material misrepresentation, falsification or omission may result in the denial or revocation of my certificate(s), permit(s) or authorization(s).

ORIGINAL SIGNATURE OF APPLICANT | *Neil G. Harvey* |   DATE: | 4 - 14 - 10 |

*Board of Education means a Connecticut local or regional Board of Education, regional educational service center, unified school district, cooperative arrangement established pursuant to 10-158A of the Connecticut General Statutes, the Vocational-Technical School System, approved private special education facilities, the Gilbert School, Norwich Free Academy or Woodstock Academy.

*Original Signatures Must Be On Form Submitted*

**ED 183**

PART II: STATEMENTS OF PROFESSIONAL EXPERIENCE

If A or B are checked, the experience portion of this form must be completed by the superintendent or his or her designee.

A. ☐ The applicant has served less than 10 months under an Initial Educator Certificate.

B. ☐ The applicant has not completed the BEST Program.

The Superintendent's Office **MUST** Complete The Grid Below. (Applicants do **NOT** complete sections below this line.)

| Position Held (e.g., teacher, administrator, social worker, etc.) | Subject/Field *For middle/ secondary teachers, indicate each subject taught.* | Grade Level | Certification Endorsement Required for Position | Check Below if: | | Dates of Service | |
|---|---|---|---|---|---|---|---|
| | | | | Full-Time (50% or more) | Part-Time (less than 50%) | From (Month/ Year) | To (Month/ Year) |
| Teacher | School Counselor | | 068 | ✓ | | 1/94 | Present |
| Teacher | Physical Education | | 044 | ✓ | | 9/86 | 12/93 |
| | | | | | | | |
| **Adult Education** | If the applicant served as an adult education teacher, indicate the number of hours served per school year. | | | # of hours/yr | # of hours/yr | # of hours/yr | |

Signature of Superintendent/Exec. Dir./Designee
(Original signature, no stamps accepted)

Carole Pannozzo
Typed or Printed Name of Person Signing Above

Bridgeport Public Schools
Board of Education

E-Mail Address

4/22/10
Date

Executive Director of Human Resources
Title

(203) 275-1042
Telephone Number

( )
FAX Number

*Information on this application is subject to disclosure pursuant to the Freedom of Information Act.*

BBOE000009

**ED 183**

## CONNECTICUT ENDORSEMENT CODES

### Teaching Endorsements

| | | | |
|---|---|---|---|
| 010 | Business, 7 – 12 | 049 | Music, PK – 12 |
| 013 | Elementary, K – 6 | 055 | Partially Sighted, PK – 12 |
| 015 | English, 7 – 12 | 057 | Hearing Impaired, PK – 12 |
| 018 | French, 7 – 12 | 059 | Blind, PK – 12 |
| 019 | German, 7 – 12 | 062 | School Library Media Specialist |
| 020 | Italian, 7 – 12 | 072 | School Nurse-Teacher |
| 021 | Latin, 7 – 12 | 073 | School Dental Hygienist-Teacher |
| 022 | Russian, 7 – 12 | 089 | Marketing Education, 7 – 12 |
| 023 | Spanish, 7 – 12 | 101 | World Language Instructor, Elementary |
| 024 | Other World Language, 7 – 12 | 102 | Remedial Reading & Remedial Language Arts, 1 – 12 |
| 026 | History & Social Studies, 7 – 12 | 104 | Cooperative Work Education/Diversified Occupations |
| 029 | Mathematics, 7 – 12 | 110 | Unique Subject-Area Endorsement |
| 030 | Biology, 7 – 12 | 111 | Teaching English to Speakers of Other Languages (TESOL), PK – 12 |
| 031 | Chemistry, 7 – 12 | 112 | Integrated Early Childhood/Special Ed., Birth – Kindergarten |
| 032 | Physics, 7 – 12 | 113 | Integrated Early Childhood/Special Ed., Nursery -K – Elem. 1 – 3 |
| 033 | Earth Science, 7 – 12 | 165 | Comprehensive Special Education, K – 12 |
| 034 | General Science, 7 – 12 | 215 | English, Middle School |
| 035 | Driver Education | 226 | History & Social Studies, Middle School |
| 040 | Agriculture, Pre-K – 12 | 229 | Mathematics, Middle School |
| 041 | Vocational Agriculture, 7 – 12 | 230 | Biology, Middle School |
| 042 | Art, PK – 12 | 231 | Chemistry, Middle School |
| 043 | Health, PK – 12 | 232 | Physics, Middle School |
| 044 | Physical Education, PK – 12 | 233 | Earth Science, Middle School |
| 045 | Home Economics, PK – 12 | 234 | General Science, Middle School |
| 047 | Technology Education, PK – 12 | 235 | Integrated Science, Middle School |

### Administrative Endorsements

| | |
|---|---|
| 085 | School Business Administrator |
| 092 | Intermediate Administration or Supervision |
| 093 | Superintendent of Schools |
| 097 | Reading and Language Arts Consultant |
| 105 | Department Chairperson |

### Adult Education Endorsements

| | |
|---|---|
| 088 | Non-English Speaking Adults |
| 106 | High School Credit Diploma Program |
| 107 | External Diploma Program/Noncredit Mandated Programs |

### Special Services Endorsements

| | |
|---|---|
| 061 | Speech and Language Pathologist |
| 068 | School Counselor |
| 070 | School Psychologist |
| 071 | School Social Worker |

### Vocational Endorsements

| | |
|---|---|
| 082 | Vocational Technical Administrator |
| 090 | Occupational Subject, Vocational Technical Schools |
| 091 | Trade-Related Subjects, Vocational Technical Schools |
| 098 | Trade & Industrial Occupations – Comprehensive High School |
| 103 | Health Occupations – Comprehensive High School |
| 108 | Practical Nurse Education Instruction |
| 109 | Health Occupations – Vocational Technical Schools |

### ☼☼Certification Codes No Longer Issued. These codes may only be renewed by current endorsement holders☼☼

| | | | |
|---|---|---|---|
| 001 | Pre-K – Grade 8 | 054 | Physically Handicapped, 7 – 12 |
| 002 | Pre-K – Grade 6 | 056 | Partially Sighted, 7 – 12 |
| 003 | Pre-K – Grade 3 | 058 | Deaf, 7 – 12 |
| 004 | Grades 1 – 8 | 060 | Blind, 7 – 12 |
| 005 | Elementary Education, 1-6 | 063 | Special Teacher of Reading, 1 – 8 |
| 006 | Middle Grades, 4 – 8 | 064 | Special Teacher of Reading, 7 – 12 |
| 007 | Academic Subjects | 065 | Comprehensive Special Education, PK – 12 |
| 008 | Pre-K and Kindergarten | 066 | Guidance Counselor – Elementary |
| 009 | Bilingual, PK – 12 | 067 | Guidance Counselor – Secondary |
| 011 | Licensed Practical Nurse | 069 | Psychological Examiner |
| 016 | English, 7 – 9 | 074 | Elementary Principal |
| 017 | Speech, 7 – 12 | 075 | General Supervisor – Elementary |
| 025 | History, 7 – 12 | 076 | Secondary Principal |
| 027 | Social Studies, 7 – 12 | 077 | General Supervisor – Secondary |
| 028 | History & Social Studies, 7 – 9 | 078 | Principal – Combined School |
| 036 | Core Curriculum | 079 | Special Supervisor |
| 037 | Psychology, 7 – 12 | 080 | Administrative Assistant |
| 038 | Sociology, 7 – 12 | 081 | Superintendent of Schools |
| 039 | Secondary Subject | 083 | Special Administrative |
| 046 | Vocational Home Economics, PK – 12 | 086 | Director of Adult Education (Full Time) |
| 048 | Librarian, 7 – 12 | 087 | Director of Adult Education (Part Time |
| 050 | Special Subject | 094 | Adult Education |
| 051 | Mentally Handicapped 1 – 12 | 095 | Education Supervisor (State Department) |
| 052 | Mentally Handicapped 7 – 12 | 096 | Reading Consultant, K – 8 |
| 053 | Physically Handicapped, 1 – 12 | 265 | Comprehensive Special Education, 1 – 12 |

BBOE000010

U.S. Postal Service™
CERTIFIED MAIL™ RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To    Neil Kavey
Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

PS Form 3800, June 2002          See Reverse for Instructions

... OF EDUCATION
... Hall - 45 Lyon Terrace
...eport, Connecticut 06604

MEMBERS OF THE BOARD cont.

JACQUELINE KELLEHER

JUDITH BANKOWSKI

DAVID NORTON

HERNAN ILLINGWORTH

... 2007 BROAD FINALIST
... ECT GREAT THINGS!"

August 1, 2012

Neil Kavey
379 Szost Drive
Fairfield, CT 06824

Dear Mr. Kavey,

I am pleased to inform you that you have been selected for the position of Director of Athletics, Health and Physical Education effective August 16, 2012. You will be paid on the Bridgeport Council of Administrators and Supervisors Group II, Step 1 level for a salary of $129,063. In your position you will be working under the direction of John Fabrizi, Director of Adult Education.

Please accept my personal congratulations on your selection. I know you will provide outstanding leadership for the School District and I look forward to working with you in your new assignment.

Sandra Kase

Sandra Kase, Ed.D.
Chief Administrative Officer

Pc: Personnel File

BBOE000011

# BOARD OF EDUCATION

City Hall - 45 LyonTerrace
Bridgeport, Connecticut 06604

**PAUL G. VALLAS**
Superintendent of Schools

MEMBERS OF THE BOARD

JACQUELINE KELLEHER, Ed.D
Chairperson

KENNETH MOALES JR.
Vice-Chairperson

HERNAN ILLINGWORTH
Secretary

MEMBERS OF THE BOARD cont.

LETICIA COLÓN

THOMAS A MULLIGAN

BOBBY SIMMONS

SAUDA EFIA BARAKA

MARIA PEREIRA

JOHN BAGLEY



**2006 & 2007 BROAD FINALIST
"EXPECT GREAT THINGS!"**

November 5, 2012

Neil Kavey
379 Szost Drive
Fairfield, Connecticut 06824

Dear Mr Kavey:

I am pleased to inform you that at a regular meeting of the Board of Education held on August 23, 2012, you were given a probationary appointment as per the enclosed contract.

On behalf of the staff, I welcome you to the Bridgeport Public Schools, and I look forward to working with you in your new position.

Sincerely,

Sandra Kase

Sandra Kase, Ed.D.
Chief Administrative Officer
on behalf of the
Superintendent of Schools

SK:lab

BBOE000012

Office of the Board of Education
Bridgeport, Connecticut

# ADMINISTRATOR'S CONTRACT

The Board of Education of the City of Bridgeport, Connecticut, hereby agrees to employ Neil Kavey, (in whom the term "administrator" hereinafter refers) who hereby agrees to serve, under the direction of the Superintendent of Schools, as Director of Athletics, Health and Physical Education for the school year beginning August 16, 2012 and ending August 2013 subject to the conditions stated below.

In accordance with the provisions of the prevailing salary schedule of the Board of Education for Bridgeport, the Board has voted and hereby agrees to pay said administrator, and said administrator hereby agrees to accept, for services during the above-stated period, an annual salary of $121,304 in twenty-six periodic installments, payable bi-weekly beginning November 2, 2012  and subject to required deductions for the State Teacher's Retirement Fund and the United States Withholding Tax, and other agreed-to deductions which the administrator may in writing authorize.

This contract shall be renewed annually by operation of law at a salary as determined by the salary schedule as approved by the Board of Education during the period of said administrator's first one year of continuous employment by said Board, unless the administrator has been notified in writing prior to April first in one school year that the contract will not be renewed for the following year.

(1) This contract is subject to the Statutes of the State of Connecticut, to the rules and regulations of the Bridgeport Board of Education, and to the terms of the Bridgeport Civil Service Law (No. 407 of the Special Acts of 1935) and as amended.

(2) This contract may be terminated by mutual consent at any time.

(3) The administrator may resign for good reason by submitting at least thirty days' written notice at any time except during the month of August, during which month, unless the contract has been terminated by mutual consent or Board action, the administrator will accept employment with no other Board of Education in Connecticut; provided that in the event no salary agreement for the ensuing year has been signed by August first, the limitation on the administrator's resigning during the month of August shall not be binding until such an agreement has been signed.

(4) This contract shall become effective once signed by the Superintendent of Schools.

SIGNED:                                          Board of Education of Bridgeport

Administrator _Neil G. Okay_                     By _Sandra Kase_
                                                    Chief Administrative Officer
                                                    on behalf of the
                                                    Superintendent of School

Date _11/2/12 – revised_                          Date _11-5-12_

BBOE000013

# BOARD OF EDUCATION

City Hall - 45 Lyon Terrace
Bridgeport, Connecticut 06604

**PAUL G. VALLAS**
Superintendent of Schools

MEMBERS OF THE BOARD

**JACQUELINE KELLEHER, Ed.D**
Chairperson

**KENNETH MOALES JR.**
Vice-Chairperson

**HERNAN ILLINGWORTH**
Secretary



**2006 & 2007 BROAD FINALIST
"EXPECT GREAT THINGS!"**

MEMBERS OF THE BOARD cont.

**BOBBY SIMMONS**

**SAUDA EFIA BARAKA**

**LETICIA COLÓN**

**MARIA PEREIRA**

**THOMAS A MULLIGAN**

**JOHN BAGLEY**

February 28, 2013

Neil Kavey
379 Szost Drive
Fairfield, CT 06824

Dear Mr. Kavey,

This is just a reminder that your **Initial 092** certification that you are working under or hold expired/expires on **June 30, 2013**  All necessary paperwork to renew your certificate should be directed to the Office of Human Resources for signature before mailing to the State Certification Office. Teachers may also use the new Connecticut Educator Certification System (CECS) online system to renew their certification at **www.ct.gov/sde/cert**. Teachers may contact the certification office by telephone at (860) 713-6969.

Connecticut Statutes prohibit anyone from teaching without a valid certification in their endorsement area. Please call Lamar Bostic or Marisol Garcia at 203-275-1042 in Human Resources, status of your certification.   In addition, you must send us a copy of your certification to the Office of Human Resources, 45 Lyon Terrace, Suite 310, Bridgeport, CT  06604, when you are in receipt of it. Please disregard this notice if you have already submitted your paper work.

Thank you.

Sincerely,

*Kathleen M. Jaeger*
Kathleen M. Jaeger
Executive Director - Human Resources

CCP: lab

Cc:    Principal
       File

## OFFICE OF HUMAN RESOURCES
## CERTIFICATION TRACKING

Date: _6/12/13_

Name: _Neil Kavey_

Address: _394 Scost De_

_Fairfield, Ct 06824_

Phone #: _(203)_

Expiration Date of Certification: _6/30/13_

Type of Form: _EO 126_

How would you like **Human Resources** to handle **THIS FORM?**

Please Check (√) One

_√_ Mail to State

_____ Mail to Home Address

_____ Will Pick-Up

*Must Send to State 6/13/13*

BBOE000015

ED 183

If A or B are checked, the experience portion of this form must be completed by the superintendent or his or her designee.

A. ✓  The applicant has served less than 10 months under an Initial Educator Certificate.

B.      The applicant has not completed the BEST Program.

The Superintendent's Office **MUST** Complete The Grid Below.  (Applicants do **NOT** complete sections below this line.)

| Position Held (e.g., teacher, administrator, social worker, etc.) | Subject/Field *For middle/secondary teachers, indicate each subject taught.* | Grade Level | Certification Endorsement Required for Position | Check Below if: | | Dates of Service | |
|---|---|---|---|---|---|---|---|
| | | | | Full-Time (50% or more) | Part-Time (less than 50%) | From (Month/ Year) | To (Month/ Year) |
| Administrator | Director of Athletes/Physical Education/Health | | 092 | ✓ | | 8/12 | Present |
| Teacher | Guidance Counselor | | 068 | ✓ | | 1/94 | 8/12 |
| Adult Education | If the applicant served as an adult education teacher, indicate the number of hours served per school year. | | | # of hours/yr | # of hours/yr | # of hours/yr | |

_K. Jaeger_
Signature of Superintendent/Exec. Dir./Designee
(Original signature, no stamps accepted)

Kathleen   Jaeger
Typed or Printed Name of Person Signing Above

Bridgeport Public Schools
Board of Education

Kjaeger@bridgeportedu.net
E-Mail Address

3/25/13
Date

Executive Director of Human Resources
Title

(203) 275-1042
Telephone Number

(203) 337-0145
FAX Number

*Information on this application is subject to disclosure pursuant to the Freedom of Information Act.*

BBOE000016

## OFFICE OF HUMAN RESOURCES
## CERTIFICATION TRACKING

Date: _3/20/13_

Name: _Neil Kavey_

Address: _379 Szost Dr._

_Fairfield, Ct. 06824_

Phone #: _(203)_

Expiration Date of Certification: _6/13_

Type of Form: _092_

How would you like Human Resources to handle __THIS FORM?__
Please Check (√) One
___√___ Mail to State _3/27/13_
_____ Mail to Home Address
_____ Will Pick-Up

**ED 183**

C.G.S. 10-145
C.G.S. 10-145d, P.A. 03-168

**CONNECTICUT STATE DEPARTMENT OF EDUCATION**
Bureau of Educator Standards and Certification
P.O. Box 150471 – Room 243
Hartford, CT  06115-0471

## APPLICATION FOR RENEWAL OF CONNECTICUT INITIAL EDUCATOR CERTIFICATE

1. All applicants must complete Part I.  Employing district must complete Part II if applicant is employed under the Initial Educator Certificate to be renewed.
2. Enclose a fee of **$200** (includes NONREFUNDABLE $50 application fee) in the form of a money order, cashier's check or certified bank check payable to "Treasurer, State of Connecticut."  **(Renewal of an adult education certificate requires a $100 fee.)**

KAVEY
LAST NAME

NEIL                                    A          M
FIRST NAME                              MI        GENDER (M/F)

                                        - 1955
SOCIAL SECURITY NUMBER                  BIRTH DATE (Month-Day-Year) – Required

379  SZOST       DRIVE
ADDRESS (Street)                                    (Apt #)

FAIRFIELD
(City)                                  FORMER LAST NAME(S)

CT  06824 -
(State)    (Zip Code)                   _____

PHONE  203 -                            Race/Ethnicity  1. Native American
       (Home)                                           2. Asian/Pacific Islander
                                                        3. Black
       203 - 275 - 1392                 (Optional)      4. White
       (Work)                                           5. Hispanic

E-MAIL ADDRESS _____nKAvey@bridgeport.edu, net_____

Endorsements on Initial Educator Certificate        0.92
for which renewal is requested (see attached list).  Endorsement Codes

(continued)

*Information on this application is subject to disclosure pursuant to the Freedom of Information Act.*

**ED 183**

1. Have you served for a Connecticut board of education* under this Connecticut Initial Educator Certificate? If you answer "YES" to Question 1, the employing district MUST complete Part II of this form.  ✓ YES    NO

2. Have you served as a teacher, administrator or special services staff member for a period of three years within the last 10 years in a Connecticut approved nonpublic school, or out of state in a public or approved nonpublic school?  YES    ✓ NO
   List state(s) and board(s) of education _____

3. Have you ever been convicted of any crime, excluding minor traffic violations?  YES    ✓ NO

4. Have you ever been dismissed for cause from any position?  YES    ✓ NO

5. Have you ever surrendered a professional certificate, license, permit or other credential (including, but not limited to, an education credential); had one revoked, suspended, annulled, invalidated, rejected or denied for cause; or been the subject of any other adverse or disciplinary credential action?  YES    ✓ NO

Pursuant to Connecticut General Statutes Section 10-221d, the State Board of Education must complete a criminal history records check on each applicant for an initial issuance or renewal of a certificate, authorization or permit. Each applicant seeking an initial issuance or renewal of a certificate, authorization or permit must also submit to a records check of the Department of Children and Families' child abuse and neglect registry established pursuant to Connecticut General Statutes Section 17a-101k. In addition, the State Board of Education is required to submit periodically for a criminal history records check the database of all persons who hold any certificate, authorization or permit.

**NOTE:** If you answer "YES" to questions 3, 4 or 5, you must attach a signed statement of explanation. If there are multiple incidents within each question, you must list and explain each separately. Submit **official** copies of court or administrative record(s), including disposition of each case.

**APPLICANT ATTESTATION:** I certify that the information provided by me on this application and any accompanying documents contains no material misrepresentations, falsifications or omissions and that all of the information given by me is true, complete and accurate. I understand that all application and accompanying information may be verified and that any material misrepresentation, falsification or omission may result in the denial or revocation of my certificate(s), permit(s) or authorization(s).

ORIGINAL SIGNATURE OF APPLICANT   *Neil A. Kavey*          DATE: 3 |18|13

*Board of Education means a Connecticut local or regional Board of Education, regional educational service center, unified school district, cooperative arrangement established pursuant to 10-158A of the Connecticut General Statutes, the Technical High School System, approved private special education facilities, the Gilbert School, Norwich Free Academy or Woodstock Academy.

*Original Signatures Must Be On Form Submitted*

ED 126
REV. 7/03
C.G.S. 10-145
C.G.S. 10-145d, P.A. 03-168

**CONNECTICUT STATE DEPARTMENT OF EDUCATION**
Bureau of Educator Preparation and Certification
P.O. Box 150471 – Room 243
Hartford, CT 06115-0471
www.state.ct.us/sde

## STATEMENT OF PROFESSIONAL EXPERIENCE

Use a separate form for EACH school district or approved nonpublic school in which you have served.
PRINT all information in dark ink and in uppercase letters.

K A N E Y [ ] [ ] [ ] [ ] [ ] [ ]   N E I L [ ] [ ] [ ] [ ] [ ]   A
LAST NAME                                FIRST NAME                              MI

- [ ] [9] [5] [5]

SOCIAL SECURITY NUMBER                              BIRTH DATE (Month-Day-Year) – Required

The Superintendent's Office **MUST** Complete The Grid Below.  (Applicants do **NOT** complete sections below this line.)

| Position Held (e.g., teacher, administrator, social worker, etc.) | Subject/Field For middle/ secondary teachers, indicate each subject taught. | Grade Level | Certification Endorsement Required for Position | Check Below if: | | Dates of Service | |
|---|---|---|---|---|---|---|---|
| | | | | Full-Time (50% or more) | Part-Time (less than 50%) | From (Month/ Year) | To (Month/ Year) |
| Administrator | Director of Athletics/Physical Education/Health | | 092 | ✓ | | 8/12 | Present |
| Teacher | Guidance Counselor | | 068 | ✓ | | 1/94 | 8/12 |

| Adult Education | If the applicant served as an adult education teacher, indicate the number of hours served per school year. | # of hours/yr. | # of hours/yr. | # of hours/yr. |
|---|---|---|---|---|
| School Psychologist | If the applicant completed a school psychologist internship (not under contract), please check here. [ ] | | | |

**Superintendent Attestation:** Please check the appropriate box, sign and complete the school information below.

- [✓] The applicant named has served successfully in the above position(s) in our public or approved nonpublic schools.

- [ ] The applicant named has NOT served successfully in the above position(s) in our public or approved nonpublic schools.

_K. Jaeger_                                    _6/13/13_
Signature of Superintendent, Executive Director or Designee    Date
attesting to accuracy of information
(Original Signature: No Signature Stamps Accepted)

_Kathleen Jaeger_                    _Executive Director-Human Resources_
Typed or Printed Name of Person Signing Above    Title
_Bridgeport Public School_          _203-275-1042_
Employing Agent                      Telephone
_Bridgeport, CT 06604_              _KJaeger@bridgeportedu.net_
City          State  Zip Code        E-mail Address

*Information on this application is subject to disclosure pursuant to the Freedom of Information Act.*

**People's United Bank**

Reference *Neil Haney*                    Date *06/11/2013*                    **Cashier's Check**
                                                                              7729530

$***********50.00******
Pay
FIFTY DOLLARS AND  ZERO  CENTS                         13606-A1365KJ

To the  **TREASURER, STATE OF CT**
Order of

**CASHIER'S CHECK**

Notice to Customers: The purchase of an indemnity
bond may be required before this check will be replaced
or refunded in the event it is lost, misplaced or stolen.

Authorized Signature

⑈7729530⑈ ⑆221172186⑈ ⑈17000295⑈

MemberFDIC CK-002

BBOE000021

ED 126
REV. 10/11
C.G.S. 10-145
C.G.S. 10-145d, P.A. 03-168

**CONNECTICUT STATE DEPARTMENT OF EDUCATION**
Bureau of Educator Standards and Certification
P.O. Box 150471 – Room 243
Hartford, CT  06115-0471
www.ct.gov/sde

## STATEMENT OF PROFESSIONAL EXPERIENCE
Use a separate form for EACH school district or approved nonpublic school in which you have served.
PRINT all information in blue ink and in uppercase letters.

LAST NAME: K I N E Y

FIRST NAME: N E I L

MI: A

SOCIAL SECURITY NUMBER

BIRTH DATE (Month-Day-Year) – Required: - 1 9 5 5

The Superintendent's Office MUST Complete The Grid Below.  (Applicants do NOT complete sections below this line.)

| Position Held (e.g., teacher, administrator, social worker, etc.) | Subject/Field For middle/second-ary teachers, indicate each subject taught. | Grade Level | Certification Endorsement Required for Position | Check Below if: Full-Time (50% or more) | Check Below if: Part-Time (less than 50%) | Dates of Service From (Month/Year) | Dates of Service To (Month/Year) |
|---|---|---|---|---|---|---|---|
| Administrator | Director Athletics Health and P.E. | | 092 | ✓ | | 8/12 | Present |
| Teacher | Guidance Counselor | | 068 | ✓ | | 1/94 | 8/12 |
| Teacher | Physical Education | | 044 | ✓ | | 9/86 | 12/93 |
| **Adult Education** | If the applicant served as an adult education teacher, indicate the number of hours served per school year. | # of hours/yr. | | # of hours/yr. | | # of hours/yr. | |
| **School Psychologist** | If the applicant completed a school psychologist internship (not under contract), please check here. ☐ | | | | | | |

Superintendent Attestation:  Please check the appropriate box, sign and complete the school information below.

☑ The applicant named has served successfully in the above position(s) in our public or approved nonpublic schools.

☐ The applicant named has NOT served successfully in the above position(s) in our public or approved nonpublic schools.

Signature of Superintendent, Executive Director or Designee
attesting to accuracy of information
(Original Signature: No Signature Stamps Accepted)

Date: 11/14/14

Kathleen Jaeger
Typed or Printed name of Person Signing Above        ve
Bridgeport Public Schools
Employing Agent
Bridgeport, CT 06604
City        State     Zip

Chief Human Resources Officer
Title
(203) 275-1042
Telephone
kjaeger@bridgeportedu.net
E-mail Address

*Information on this application is subject to disclosure pursuant to the Freedom of Information Act.*

BBOE000022

**ED 179**
**REV. 3/13**
C.G.S. 10-145 b
as amended by PA 12-116,
Sec. 36

## CONNECTICUT STATE DEPARTMENT OF EDUCATION
### Bureau of Educator Standards and Certification
P.O. Box 150471 – Room 243
Hartford, CT  06115-0471
www.ct.gov/sde/cert



## APPLICATION FOR CONTINUATION OF PROFESSIONAL EDUCATOR CERTIFICATE

### PART I:  PERSONAL INFORMATION (Print all information in blue ink and in uppercase letters.)

LAST NAME: K A N E Y

FIRST NAME: N E I L     MI: A     GENDER (M/F): M

SOCIAL SECURITY NUMBER

BIRTH DATE (Month-Day-Year) – Required: 1 9 C C

ADDRESS (Street): 3 7 9  C Z O E T  D R I V E     (Apt #)

(City): F A I R F I E L D

(State): C T     (Zip Code): 0 6 8 2 4 -

FORMER LAST NAME(S)

PHONE
(Home): 3 6 3 -

(Work): 2 0 3 - 2 7 5 - 1 3 9 2

Race/Ethnicity: 4 (Optional)
1. Native American
2. Asian/Pacific Islander
3. Black
4. White
5. Hispanic

E-MAIL ADDRESS: nkavey@bridgeport.edu.net

1. Have you ever been convicted of any crime, excluding minor traffic violations?  ☐ YES  ☒ NO

2. Have you ever been dismissed for cause from any position?  ☐ YES  ☒ NO

3. Have you ever surrendered a professional certificate, license, permit or other credential (including, but not limited to, an education credential); had one revoked, suspended, annulled, invalidated, rejected or denied for cause; or been the subject of any other adverse or disciplinary credential action?  ☐ YES  ☒ NO

Pursuant to Connecticut General Statutes Section 10-221d, the State Board of Education must complete a criminal history records check on each applicant for an initial issuance or renewal of a certificate, authorization or permit. Each applicant seeking an initial issuance or renewal of a certificate, authorization or permit must also submit to a records check of the Department of Children and Families' child abuse and neglect registry established pursuant to Connecticut General Statutes Section 17a-101k. In addition, the State Board of Education is required to submit periodically for a criminal history records check the database of all persons who hold any certificate, authorization or permit.

**NOTE:**  If you answer "YES" to any of the above questions, you must attach a signed statement of explanation.  If there are multiple incidents within each question, you must list and explain each separately.  Submit official copies of court or administrative record(s), including disposition of each case.

*Information on this application is subject to disclosure pursuant to the Freedom of Information Act.*

PAGE 1

BBOE000023

ED 179

## PART II:  STATEMENTS OF PROFESSIONAL EXPERIENCE

Check the appropriate box to indicate service under your current Professional Educator Certificate.

A.  ☐  I have not served under my current Professional Educator Certificate for a Board of Education.*

B.  ☑  I have served under my current Professional Educator Certificate in the following positions for a Connecticut Board of Education.

If you checked "B," please complete the Grid below. Also, please submit form ED 126 signed by the superintendent, documenting experience under your current Professional Educator Certificate. A separate form ED 126 must be submitted for each district in which you were employed under this Professional Educator Certificate.

Form ED 126 is available at www.ct.gov/sde/certapps.

| Employing District | Position Held (e.g., teacher, administrator, social worker, substitute) | Grade Level | Certification Endorsement Required for Position | Check Below if: | | Dates of Service | |
|---|---|---|---|---|---|---|---|
| | | | | Full-Time (50% or more) | Part-Time (less than 50%) | From (Month/Year) | To (Month/Year) |
| Administrator | Director Athletics, P.E., Health | | 092 | ✓ | | 8/12 | Present |
| Teacher | Guidance Counselor | | 068 | ✓ | | 1/94 | 8/12 |
| Teacher | Physical Education | | 044 | ✓ | | 9/86 | 12/93 |

**APPLICANT ATTESTATION:** I certify that the information provided by me on this application and any accompanying documents contains no material misrepresentations, falsifications or omissions and that all of the information given by me is true, complete and accurate. I understand that all application and accompanying information may be verified and that any material misrepresentation, falsification or omission may result in the denial or revocation of my certificate(s), permit(s) or authorization(s).

ORIGINAL SIGNATURE OF APPLICANT [signature]          DATE: 11/14/14

*Board of Education means a Connecticut local or regional Board of Education, regional educational service center, unified school district, cooperative arrangement established pursuant to 10-158A of the Connecticut General Statutes, the Connecticut Technical High School System, approved private special education facilities, the Gilbert School, Norwich Free Academy or Woodstock Academy.

*Original Signatures Must Be On Form Submitted*

PAGE 2

BBOE000024

STATE OF CONNECTICUT

DEPARTMENT OF EDUCATION

BINDING ARBITRATION PROCEEDING

UNDER

Section 10-153f (as amended)

CONNECTICUT GENERAL STATUTES

---

In the matter of:

BRIDGEPORT BOARD OF EDUCATION

and

BRIDGEPORT COUNCIL OF SUPERVISORS
AND ADMINISTRATORS

---

ARBITRATION PANEL:

| | |
|---|---|
| Susan R. Meredith, Esq. | Chair and representing the public |
| John M. Romanow, Esq. | Representing boards of education |
| James Ferguson, Esq. | Representing employee groups |

APPEARANCES:

| | |
|---|---|
| For the Board: | Stephen M. Sedor, Esq. |
| For the Council: | John Gesmonde, Esq. |

Date of Award: February 3, 2014

BBOE000025

In accordance with C.G.S. 10-153(f), the Panel awards the attached Stipulation of the parties as its Award in this arbitration proceeding, which resolves all outstanding issues between the parties

_____

Susan R. Meredith, Chair

_____

John Romanow, representing the interests of the Bridgeport Board of Education

_____

James Ferguson, representing the interests of the Bridgeport Council of Supervisors and Administrators

BBOE000026

AGREEMENT

BETWEEN

BRIDGEPORT BOARD OF EDUCATION

AND

BRIDGEPORT COUNCIL OF

ADMINISTRATORS AND SUPERVISORS

AMERICAN FEDERATION OF SCHOOL ADMINISTRATORS
LOCAL 46, AFL-CIO

2014-2017

*Stephen M. Adler 1-28-14*

P:\GENERAL\unk\091200\707\00103808.DOCX

*1-28-14*

BBOE000027

# TABLE OF CONTENTS

ARTICLE I - RECOGNITION .......................................................................................................... 1

ARTICLE II - DEFINITION .......................................................................................................... 1

ARTICLE III - BOARD RIGHTS .................................................................................................. 2

ARTICLE IV - AGENCY SHOP REQUIREMENT ..................................................................... 2

ARTICLE V - WORK YEAR ........................................................................................................ 3

ARTICLE VI - GRIEVANCE AND ARBITRATION PROCEDURE ......................................... 4

    SECTION 1 - PURPOSE ................................................................................................................ 4
    SECTION 2 - DEFINITIONS ......................................................................................................... 4
    SECTION 3 - TIME LIMITS .......................................................................................................... 4
    SECTION 4 - INFORMAL DISCUSSION ......................................................................................... 5
    SECTION 5 - FORMAL PROCEDURE ............................................................................................ 5
        *Step 1* ................................................................................................................................ 5
        *Step 2* ................................................................................................................................ 5
        *Step 3* ................................................................................................................................ 6
    SECTION 6 - ARBITRATION ........................................................................................................ 6
    SECTION 7 - RIGHT OF COUNCIL TO FILE GRIEVANCE .............................................................. 7
    SECTION 8 - REPRESENTATION .................................................................................................. 7
    SECTION 9 - MISCELLANEOUS ................................................................................................... 7

ARTICLE VII - PROMOTIONS .................................................................................................... 8

ARTICLE VIII - ASSIGNMENTS AND TRANSFERS ............................................................... 9

    SECTION 1 - ASSIGNMENTS AND TRANSFERS ............................................................................. 9
    SECTION 2 - REDUCTION IN FORCE .......................................................................................... 10

ARTICLE IX - PROTECTION OF ADMINISTRATORS .......................................................... 14

ARTICLE X - BENEFIT PROGRAMS ......................................................................................... 16

    SECTION 1 – GROUP HEALTH INSURANCE FOR ACTIVE ADMINISTRATORS ............................... 16
    SECTION 2. – GROUP HEALTH INSURANCE FOR RETIRED ADMINISTRATORS ............................. 18
    SECTION 3. – SURVIVORS OF A DECEASED ADMINISTRATOR ...................................................... 19
    SECTION 4. – LIFE INSURANCE AND ACCIDENTAL DEATH AND DISMEMBERMENT ...................... 19
    SECTION 5. – RIGHT TO CHANGE INSURANCE CARRIERS ......................................................... 19
    SECTION 6. – ADMINISTRATOR INJURED WHILE WORKING ...................................................... 20
    SECTION 7. – SECTION 125 PLAN ........................................................................................... 20

ARTICLE XI - LEAVES OF ABSENCE ....................................................................................... 20

    SECTION 1 - SICK LEAVE ......................................................................................................... 20
    SECTION 2 - DEATH IN THE FAMILY ........................................................................................ 21
    SECTION 3 - ILLNESS IN FAMILY .............................................................................................. 22
    SECTION 4 - PERSONAL DAYS .................................................................................................. 22
    SECTION 6 - SABBATICAL LEAVE ............................................................................................. 22
    SECTION 6 - PROFESSIONAL LEAVE ......................................................................................... 23
    SECTION 7 - PREGNANCY DISABILITY LEAVE ........................................................................... 24
    SECTION 8 - CHILD-REARING LEAVE ....................................................................................... 24
    SECTION 9 - JURY DUTY ........................................................................................................... 25

ARTICLE XII - EARLY RETIREMENT ...................................................................................... 25

    SECTION 1 - ELIGIBILITY ......................................................................................................... 26
    SECTION 2 - IMPLEMENTATION ................................................................................................ 26
        *A. Retirement* ................................................................................................................. 26

i

*B. Age*.................................................................................................................................*26*
*C. Years of Credit* ...........................................................................................................*26*
*D. Last Salary* .................................................................................................................*26*
*E. Maximum Last Salary* ..............................................................................................*26*
*F. Formula for Implementation*.....................................................................................*27*
*G. Formula Factor and Number of Yearly Payments*...................................................*27*
*H. Yearly Payment* .........................................................................................................*27*
*I. Dates of Payment* .......................................................................................................*27*
*J. Survivorship Payment* ...............................................................................................*27*

ARTICLE XIII - SALARIES ...................................................................................27

ARTICLE XIV - PAYROLL DEDUCTIONS .........................................................28

ARTICLE XV - SUPERVISOR FILES ...................................................................30

ARTICLE XVI - STAFFING.....................................................................................30

ARTICLE XVII - FEDERALLY FUNDED POSITIONS........................................30

ARTICLE XVIII - RIGHTS OF COUNCIL .............................................................31

ARTICLE XIX - FAIR PRACTICES .......................................................................32

ARTICLE XX - NO STRIKE ....................................................................................32

ARTICLE XXI - GENERAL SAVINGS CLAUSE ..................................................32

ARTICLE XXII - IMPACT STATEMENT ..............................................................32

ARTICLE XXIII - PAST PRACTICES ....................................................................33

ARTICLE XXIV - DURATION .................................................................................33

APPENDIX A – 2014-2015 SALARY SCHEDULE .............................................................34
APPENDIX B – 2015-2016 SALARY SCHEDULE .............................................................35
APPENDIX C – 2016-2017 SALARY SCHEDULE .............................................................36

BBOE000029

## AGREEMENT

THIS AGREEMENT by and between the Bridgeport Board of Education (hereinafter referred to as the "Board") and the Bridgeport Council of Administrators and Supervisors (hereinafter referred to as the "Council"); pursuant to binding arbitration.

## ARTICLE I

## RECOGNITION

The Bridgeport Board of Education hereby recognizes the Bridgeport Council of Administrators and Supervisors as the exclusive agent as defined in Connecticut General Statutes Sections 10-153a through 10-153g as amended by Public Act 76-403 for all certified professional employees employed by the Bridgeport Board of Education in positions requiring an intermediate administrator or supervisor certificate or the equivalent thereof, and department chairman, but excluding the Superintendent of Schools, the Associate Superintendent of Schools, all Assistant Superintendent of Schools, the Director of Human Resources, any certified professional employees who act for the Bridgeport Board of Education in negotiations with certified professional personnel or are directly responsible to the Bridgeport Board of Education for personnel relations or budget preparations, temporary substitutes or all non-certified employees of the Bridgeport Board of Education.

## ARTICLE II

## DEFINITION

A.    In the construction of the following sections of this contract, words and phrases shall be construed according to commonly approved usage of the language. Technical words and phrases as have acquired a peculiar and appropriate meaning in education shall be construed accordingly:

B.    As used in the contract, the following terms shall have the meanings as set below:

1.    Board shall mean the Board of Education of the City of Bridgeport;

2.    Council shall mean the Bridgeport Council of Administrators and Supervisors;

3.    Superintendent shall mean the Superintendent of Schools for the City of Bridgeport or his/her designee;

4.    Members of the Unit shall mean all professional personnel covered in Article II of this contract;

5.    Positions requiring an intermediate administrator or supervisor's certificate or the equivalent thereof are those set forth in Section 10-145a-92 of the Regulations of the State Board of Education, as they may be amended.

1

BBOE000030

## ARTICLE III

## BOARD RIGHTS

It is recognized that the Board has and will continue to have, whether exercised or not, the sole and unquestioned right, responsibility and prerogative to direct the operation of the public schools in the City of Bridgeport in all its aspects, including but not limited to the following: To maintain public elementary and secondary schools and such other educational activities as in its judgment will best serve the interests of the City of Bridgeport, to decide the need for school facilities; to determine the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes; to determine the number, age and qualifications of the pupils to be admitted into each school; to employ, assign and transfer Administrators; to suspend or dismiss the Administrators of the schools in the manner provided by statute or ordinance; to designate the schools which shall be attended by the various children within the City; to make such provisions as will enable each child of school age residing in the City to attend school for the period required by law and provide for the transportation of children wherever it is reasonable and desirable; to prescribe rules for the management, studies, classification and discipline for the public schools; to decide the textbooks to be used; to make rules for the arrangement, use and safekeeping of the school libraries and to approve the books selected therefore and to approve plans for school buildings; to prepare and submit budgets to the Common Council and, in its sole discretion, expend money appropriated by the City for the maintenance of the schools, and to make such transfers of funds within the appropriated budget as it shall deem desirable. These rights, responsibilities and prerogatives are not subject to delegation in whole or in part, except that the same shall not be exercised In a manner inconsistent with, or in violation of, any of the specific terms and provisions of this Agreement.

## ARTICLE IV

## AGENCY SHOP REQUIREMENT

**Section 1.**

Within thirty (30) days after employment, or the execution of this Agreement, whichever is later, all members of the bargaining unit shall have the opportunity to join the Council and execute an authorization permitting the deduction of union dues and assessments.

**Section 2.**

Any member of the bargaining unit who has not joined the Council during such period, or having joined, has not remained a member, shall immediately execute an authorization permitting deduction of a service fee which shall be no greater than the proportion of union dues uniformly required of members to underwrite the costs of collective bargaining, contract administration and grievance adjustment. The Council shall be required to notify the School Board sufficiently in advance of issuance of the first employee paychecks of the amount of such service fee. It is understood that the payment of such sums shall not constitute an agreement to become a member of the Council.

2

BBOE000031

**Section 3.**

In the event that a member of the bargaining unit does not join the Council or pay the required service fee by the thirtieth (30th) day as required, the Board agrees to deduct the annual service fee from the member's salary through payroll deduction. The amount of said service fee, computed as aforesaid, shall be certified by the Council to the Board not later than thirty (30) days prior to the commencement of the school year.

**Section 4.**

As a condition to the effectiveness of this Article, the Council agrees to Indemnify and save the Board harmless against any and all claims, demands, costs, suits or other forms of liability and all court or administrative agency costs that may arise out of, or by reason of, action taken by the Board for the purpose of complying with this Article.

**Section 5.**

The Board shall deduct the service fee from the salary of non-members of the Council bi-weekly and remit the same to the Council treasurer.

**ARTICLE V**

**WORK YEAR**

      A.     Except for specified days set forth below, Administrators are required to be on the job for days that the main office is open, including snow days notwithstanding that the individual schools may be closed. All workdays are full days, including workdays during the Summer. Days on which schools are closed due to religious holidays are workdays, unless the Administrator celebrates the religious holiday. Building Administrators are responsible for all programs in their buildings, including Summer programs and after school programs.

      B.     Groups I, II, III and IIIA will be on a twelve (12) month year. Vacation time will consist of the Christmas recess and April vacation weeks, and fifteen (15) working days which, unless otherwise directed by the Superintendent, must be taken within the period following the last day of school in June through the next to the last Friday before the start of school. Vacation schedules must be reported, in writing, by each Administrator to the Superintendent and approved by the Superintendent before the close of school. In the event the February vacation is reinstated in the future, the Administrators shall have the option of substituting the February vacation week for the above-referenced April vacation week.

      C.     Group IV will be on the regular teachers schedule with the addition that they be in their schools or, in the case of Administrators not assigned to specific schools, on the job, for a total of 201 days, any of which days in excess of the regular teachers schedule, unless otherwise directed by the Superintendent, can be broken up to include time after school closes or before the opening of the new school year. Such days must be approved in advance by the Superintendent.

3

BBOE000032

D.     An Administrator may carry over up to five (5) unused vacation days per year with the approval of the Superintendent, which approval shall not unreasonably be withheld.   Said carry over vacation days may accumulate to ten (10) such accumulated days.   Said accumulated days to a maximum of ten (10) shall be paid out at the Administrators per diem rate at the time of retirement, provided however, that said days shall only be paid out in the event the Administrator retires and commences the immediate collection of a STRB retirement.

**ARTICLE VI**

**GRIEVANCE AND ARBITRATION PROCEDURE**

**Section 1.**       **Purpose**

The purpose of this procedure is to secure at the lowest possible administrative level, equitable solutions to problems which may arise from time to time with respect to the provisions of this Agreement. Both parties agree that these proceedings shall be kept as informal and confidential as appropriate at any level of the procedure.

**Section 2.**       **Definitions**

A.     A "grievance" shall mean a complaint by an Administrator that he has been treated unfairly or inequitably because of a violation, misinterpretation or misapplication of the provisions of this Agreement or of established policy or practice.

B.     "Administrator" shall mean any certified professional employee member of this bargaining unit and may include a group of Administrators similarly affected by a grievance.

C.     "Days" when referred to in the time limits hereof, shall mean days when schools are in session.

**Section 3.**       **Time Limits**

A.     Since it is important that grievances be processed as rapidly as possible, the number of days indicated at each step shall be considered as a maximum. The time limits specified may, however, be extended by written mutual agreement of the parties in interest.

B.     If an Administrator does not file a grievance with the Assistant Superintendent, in writing, within twenty (20) days after he knew or should have known of the act or conditions on which the grievance is based, then the grievance shall be considered to have been waived.

4

C.  Failure by the Administrator at any step to appeal a grievance to the next step within the specified time limit shall be deemed to be acceptance of the decision rendered at that step.

D.  Failure by the Assistant Superintendent or the Superintendent, or the Board to respond to the grievant within the specified time limit shall permit the grievance to be moved to the next step.

**Section 4.**   **Informal Discussion**

A.  If an Administrator feels that he may have a grievance, he may discuss the matter with his immediate supervisor or other appropriate Administrator in an effort to resolve the problem informally. The grievant may have one representative of the Council to assist in the informal discussion.

**Section 5.**   **Formal Procedure**

**Step 1.**

If the aggrieved Administrator is not satisfied with the informal discussion concerning his grievance, he may file a grievance in writing, with the Assistant Superintendent of Schools, with a copy to the Council. Such filing with the Superintendent must take place within the twenty (20) day period as set forth in Section 3B above.

The Assistant Superintendent shall, within ten (10) days after receipt of the written grievance, meet with the aggrieved Administrator and with one representative of the Council for the purpose of resolving the grievance.

Within ten (10) days after the meeting, the Assistant Superintendent shall render a decision and provide the reasons therefore, in writing, to the aggrieved Administrator, with a copy to the Council.

**Step 2.**

If the aggrieved Administrator is not satisfied with the disposition of his grievance at Step I, he may, within five (5) days after receipt of the Assistant Superintendent's decision, refer the grievance to the Superintendent. The Superintendent shall, within ten (10) days after receipt of the written grievance, meet with the aggrieved Administrator and one representative of the Council for the purpose of resolving the grievance. Within ten (10) days after the meeting, the Superintendent shall render a decision and provide the reasons therefore, in writing, to the aggrieved Administrator, with a copy to the Council.

5

BBOE000034

### Step 3.

If the aggrieved Administrator is not satisfied with the disposition of his grievance at Step 2, he may, within five (5) days after the receipt of the Superintendent's decision, file a written appeal with the Board of Education.

The Board of Education shall, within fifteen (15) days after receipt of the written appeal, meet with the aggrieved Administrator and with one representative of the Council and the Superintendent for the purpose of resolving the grievance. A full and accurate record of such meeting shall be kept, with copies to the involved parties.

The Board shall, within ten (10) days after such meeting, render its decision and the reasons therefore, in writing, to the aggrieved Administrator, with a copy to the Council.

**Section 6.**        **Arbitration**

A.    If the aggrieved Administrator is not satisfied with the disposition of the grievance at Step 3, he may, within five (5) days after the receipt of the Board's decision, request the President of the Council, in writing, to submit the grievance to arbitration.

B.    The Council may, within five (5) days after receipt of such request, decide to submit the grievance to arbitration. Written notice is to be sent to the Board.

C.    The Chairman of the Board and the President of the Council shall, within five (5) days after such written notice, jointly select an arbitrator who is an experienced and impartial person of recognized competence. If the parties are unable to agree on an arbitrator within five (5) days, the matter shall be submitted to the American Arbitration Association under the Rules of Voluntary Arbitration of the American Arbitration Association.

D.    The arbitrator so selected shall confer promptly with representatives of the Board and the Council and shall hold such further hearings with the aggrieved Administrator and other parties in interest as he shall deem requisite.

E.    The arbitrator shall render his decision in writing to all parties in interest, setting forth his findings of fact, reasoning and conclusions on the issues submitted. The arbitrator shall be without power or authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this Agreement and shall be without power or authority to add to, subtract from, modify or delete any term or provision of this Agreement. The decision of the arbitrator shall be submitted to the Board and to the Council and, subject to law, shall be final and binding, provided that the arbitrator shall not usurp the function of the Board or the proper exercise of the judgment and discretion of the Board under law and under this Agreement.

6

BBOE000035

F.     The cost of the services of the arbitrator shall be borne equally by the Board and the Council. Other costs incurred by either party shall be paid for by that party.

**Section 7.**     **Right of Council to File Grievance**

The Council shall have the right to file a grievance alleging a breach of this Agreement which affects a group or class of Administrators as a whole and shall process said grievance beginning with Step 2 of the Grievance Procedure.

**Section 8.**     **Representation**

A.     No reprisals of any kind shall be taken by either party or by any member of the administration against any participant in the grievance procedure by reason of such participation.

B.     Nothing herein shall be construed as compelling the Council to submit a grievance to arbitration.

C.     When an Administrator is not represented by the Council, the Council shall have the right to be present and to state its views at all stages of the procedure.

D.     If they so desire, the Board and/or the Council may, at any stage of the procedure, call upon the professional services of any person whose assistance is deemed necessary. The cost of such services shall be borne by the party requesting them.

**Section 9.**     **Miscellaneous.**

A.     All documents, communications, and records dealing with the processing of grievances shall be filed separately from the personnel files of the participants.

B.     Forms for filing and processing grievances and other necessary documents shall be prepared by the Superintendent, with the approval of the Council, and shall be made available to the Council so as to facilitate operation of the grievance procedure.

C.     The written grievance should state the specific Article(s) of this Agreement or the established policy or practice claimed to have been violated, a brief set of facts, and the relief requested.

D.     No Administrator will be disciplined, reprimanded, suspended, dismissed, deprived of his professional advancement or given an adverse evaluation of his professional service without just cause.

BBOE000036

E.   Reference herein to "established policy or practice" shall not limit or restrict any rights the Board lawfully retains to create, amend, add to, modify or delete any such policy or practice.

## ARTICLE VII

## PROMOTIONS

A.   Promotional positions as used in this Article mean any position in a higher salary group than the Administrator's current salary group.

B.   As soon as an administrative vacancy occurs or is known will occur, and which the Board intends to fill, such vacancy shall be electronically publicized on the District's and/or Human Resources website or email for at least five (5) days for existing positions and ten (10) days for new positions prior to the filling of that vacancy. Said notice of vacancy shall clearly set forth the qualifications and the salary for that position.

C.   Administrators who desire to apply for such vacancies shall file their applications in writing with the Superintendent within the time limits specified in the notices. Preference may be given to qualified Administrators currently employed by the Board, in the discretion of the Board.

D.   Whenever a given position has certain state certification requirements, all future appointees thereto shall be certified accordingly.

E.   All appointees to the aforesaid vacancies and openings shall be made without regard to age, race, creed, religion, nationality, sex, marital status, color or physical handicap.

F.   All appointees to promotional positions as set forth in this Article 7 shall serve a twelve calendar month probationary period commencing on the date the appointee begins to serve in the promotional position. At the end of said twelve month period, if the Board is not satisfied with the individual's performance, attendance or service in said position in any regard, said individual may be returned to his or her former position, without recourse to the grievance procedure. Appointees from outside the bargaining unit to any bargaining unit position shall serve a probationary period of two years. At the end of, or at anytime during said probationary period, if the Board is not satisfied with the individual's performance, attendance or service in said position in any regard, said individual may be reassigned to a position teacher's bargaining unit, without recourse to the grievance procedure.

The language set forth in this Section F is not intended to preclude the Board's rights under Connecticut General Statute §10-151.

8

## ARTICLE VIII

## ASSIGNMENTS AND TRANSERS

**Section 1.**     **Assignments and Transfers**

A.   When involuntary transfers are necessary, the Administrator(s) involved in the move(s) will be given the reasons in writing and will have an opportunity to meet with the Superintendent or a designated Associate or Assistant Superintendent to discuss the matter.

Upon request from an involved Administrator who objects to the transfer, a Council representative may participate in this meeting or a meeting called subsequently concerning this same transfer.

B.   Notice of transfers shall be given to Administrators as soon as possible and, under normal circumstances, no later than August 15th for the next school year.

C.   When the Board makes an involuntary transfer of an Administrator to a Group which pays at a level lower than the Administrator is currently receiving, such administrator's salary shall be reduced as follows: (1) in year one, the administrator shall be paid his or her previous salary, less one thousand dollars ($1,000); (2) in year two, the administrator shall be paid his or her previous salary less one thousand dollars, minus 25% of the difference between that salary and the salary at the step of the position the administrator holds; and (3) in year three, the administrator shall be paid the salary at the step of the position that he or she holds.

D.   No Administrator with more than 25 years of experience shall have his or her salary reduced because of the decrease of the number of pupils in the building, or involuntary transfer.  However, there shall be no salary protection at all for any administrator who receives an involuntary transfer for disciplinary reasons.

E.   An Administrator who requests a transfer may file his application with the Assistant Superintendent or Superintendent with a copy to the Personnel Office on or before March 1st for the next school year. In deciding upon an application for such transfer, the Assistant Superintendent will consider the applicant's qualifications, length of service in the system, the wishes of the applicant and the needs of the school system.

F.   Notwithstanding any provision of this contract to the contrary it is understood and agreed that transfers are the sole prerogative of the Board and shall not be arbitrable.

BBOE000038

**Section 2.**     **Reduction in Force**

A.     It is recognized that, under Section 10-220 and 10-4a of the Connecticut General Statutes, the Board of Education has the responsibility to maintain good public elementary and secondary schools and to implement the educational interests of the state. However, recognizing also that it may become necessary to eliminate certified staff positions in certain circumstances, this binding procedure is adopted to provide a fair and orderly process should such eliminations become necessary.

B.     If in the Board's opinion it is necessary to reduce the administrative staff, the primary considerations in determining the order of such reductions shall be qualifications, certification and seniority.

C.     It is further agreed and understood that the Board's responsibility requires that in implementing the criteria in Section B above, the impact upon its affirmative action obligations and its responsibilities in Section A above, must also be considered.

D.     For purposes of this Article, seniority shall be defined as the most recent period of uninterrupted administrative service (employment) within the Bridgeport School System. If years of Bridgeport service as an Administrator are equal, the following criteria will be used to determine greatest seniority:

   (i)     The Administrator with the earlier date of appointment by the Board of Education will have greater seniority;

   (ii)    If the appointment dates are the same, the Administrator with the most amount of Bridgeport service, including non-administrative service, will have greater seniority;

   (iii)   If the Administrators have the same amount of Bridgeport service including non-administrative service, the teaching plus administrative service outside of Bridgeport will have greater seniority;

   (iv)    If the Administrators have the same amount of teaching plus administrative service outside of Bridgeport, then seniority will not be used as a consideration in the order of layoff as to those Administrators.

E.     In order to promote an orderly reduction in the administrative personnel, the following procedure will be used:

   (i)     Any Administrator relieved of his duties because of reduction of staff or elimination of position shall be offered an administrative opening (if one exists) in his job title within his salary group for which he is certified and qualified;

BBOE000039

(ii)    If there is no existing administrative opening in his job title within his salary group for which he is qualified and certified, the displaced Administrator shall be offered the position of an Administrator who has the least seniority in his job title within his salary group for which he is certified and qualified;

(iii)   If there is no existing administrative opening in his job title within his salary group for which he is qualified and certified, and the displaced Administrator has the least seniority in his job title within his salary group, he will be offered an administrative opening, if one exists, as follows: first, in his current salary group for which he is certified and qualified; and second, in any other lower grouped job title for which he is certified and qualified;

(iv)    If there are no existing administrative openings in any lower groups for which he is certified and qualified and the displaced Administrator has the least seniority in his present job title within his salary group, but has administrative seniority over an Administrator in another job title within his or a lower salary group for which the displaced Administrator is certified and qualified, the displaced Administrator will be offered such position (first, the position within his current salary group); provided, however, such appointment does not constitute a promotion; if an Administrator is relieved of his duties because of a reduction in staff or elimination of position and another Administrator position is not otherwise available as aforesaid, he will be offered a teaching position for which he is certified and qualified and which is held by a teacher with fewer years of service in the Bridgeport School System;

(vi)    If an Administrator is relieved of his duties because of reduction in staff or an elimination of position and is employed as a teacher, he will be given the experience credit on the salary schedule according to the teacher contract for his administrative and teacher experience within the Bridgeport School System and shall retain all accumulated sick leave;

(vii)   In the event an administrator is displaced to an administrative classification with a salary lower than that which the displaced administrator previously enjoyed, such administrator's salary shall be reduced as follows: (1) in year one, the administrator shall be paid his or her previous salary, less one thousand dollars ($1,000); (2) in year two, the administrator shall be paid his or her previous salary less one thousand dollars, minus 25% of the difference between that salary and the salary at the step of the position the administrator holds; and (3) in year three, the administrator shall be paid the salary at the step of the position that he or she holds.

11

BBOE000040

(viii)   A displaced Administrator who receives a position in another Administrator salary group shall be paid on the same salary step for such new position's salary group at his previous administrative position's step;

(ix)   In the event an Administrator is displaced to a teaching position, then, upon the happening of such event, such administrator's salary shall be reduced as follows: (1) in year one, the administrator shall be paid his or her previous salary, less one thousand dollars ($1,000); (2) in year two, the administrator shall be paid his or her previous salary less one thousand dollars, minus 25% of the difference between that salary and the salary at the step of the position the administrator holds; and (3) in year three, the administrator shall be paid the salary at the step of the position that he or she holds.

Any Administrator who has been displaced as aforesaid shall be placed on a reappointment list for his former administrative position, or another similar position of comparable pay and shall remain thereon until re-appointed or for three years from the effective date of termination, whichever occurs first, provided such Administrator does not refuse a reappointment. Administrators shall be recalled to positions for which they are certified and qualified and in which they have previous acceptable experience, according to their administrative seniority in the Bridgeport Public School System. If reappointment is offered consistent with the above and is refused by the Administrator, he shall thereupon be removed from the reappointment list;

(xi)   The term "qualified" as used herein means recognized and satisfactory experience in the general area into which the Administrator seeks to bump or to be recalled.

F.    In order to be eligible for recall, an Administrator must:

(i)   Submit his request to be placed on the recall list, in writing, to the Superintendent within thirty (30) days of termination or displacement; such request must include the Administrator's address;

(ii)   Advise the Board, in writing, within ten (10) days of any change in address;

(iii)   Advise the Superintendent, in writing, of acceptance of recall within two weeks after notification of recall; or be removed from the recall list;

(iv)   All notices provided for in this section must be in writing and transmitted by certified mail;

BBOE000041

      (v)    The Board's obligation will be limited to sending notice of recall to the Administrator's last address in the Board's files.

G.    The job titles and groups referred to in this Article are as follows:

I    Director of Pupil Services
Director of Vocational Aquaculture School
Elementary Principals  900+ students
Executive Director Elementary Education
Executive Director Teaching & Learning
High School Principals

II    Director of Adult Education
Director of Athletics and Physical Education
Director of Central Magnet High School
Director of District Planning and Placement
Director of Psychological Services
Director of Social Work Services
Elementary Principals 899 students to 421 students
Elementary Principals K-8 regardless of size
Director of Bilingual and/or Foreign Language
Director of Speech, Language and Hearing
Director of Early Childhood, Community Outreach, Charter and Preschools

III    Assistant Director of Adult Education
Assistant Director of State Grants
Assistant Principals 12 months hired prior to July 1, 2014
Coordinator of Priority District Grants
Director of Educational Technology
Director of English
Director of Evaluation and Research
Director of Mathematics
Director of Performing Arts
Director of Reading and Language Arts
Director of Science
Director of Social Studies
Director of Visual Arts
Elementary Principals 420 students and below
Supervisor of Pupil Services
Supervisor of Skane Center
Supervisor of Special Education

IIIA    12 Month Assistant Principals Filled on or after July 1, 2014

IV    Assistant Director of Bilingual Education
Assistant Director of Mathematics

13

BBOE000042

Assistant Director of Science
Assistant Principals 10 months
Compact Site Coordinator
Grant Coordinator for Bridgeport Public Schools' SES Program
"Bridgeport Academy of Learning"
Supervisor of Alternative Education

Salary group placement, where based on student population size, shall be determined on the basis of student population size on October 15.  Any student population size changed after October 15 will not change the Administrators salary group.

## ARTICLE IX

## PROTECTION OF ADMINISTRATORS

### Section I.

Members shall report immediately in writing to the central office all cases of assault suffered by them in connection with their employment. Such report shall be forwarded, through the Superintendent to the Board of Education. Any Administrator involved, or alleged to be involved, in the incident to be reported shall not be required to make such report as aforesaid, but shall promptly delegate the responsibility therefore to another Administrator. In the event the second Administrator fails to report the incident in a timely manner, the first "involved" Administrator shall be held fully accountable for the failure to report.

### Section 2.

This report shall be forwarded to the Board which shall comply with any reasonable request from the member of the unit for information in its possession relating to the incident or the persons involved, and shall act in appropriate ways as liaison between the member of the unit, the police, and the courts.

### Section 3.

The Board agrees to provide legal counsel to defend any member of the unit in any civil action arising out of an assault on a member of the unit or any reasonable disciplinary action taken against a student by a member of the unit, and in any civil action arising-out of any claim, demand, suit or judgment by reason of alleged negligence or other act resulting in accidental damage to or destruction of property, within or without the school building, providing such member of the unit, at the time of the accident resulting in such injury, damage or destruction, was acting in the discharge of his duties within the scope of his employment or under the direction of the Board.

14

BBOE000043

**Section 4.**

If criminal proceedings are brought against a member of the unit alleging that he committed an assault in connection with his employment, such member of the unit may request the Board to furnish legal counsel to defend him in such proceeding. If the Board does not provide such counsel and the member of the unit prevails (including nolle or dismissal) in the proceedings, then the Board shall reimburse the member of the unit for reasonable counsel fees incurred by the member of the unit in his defense.

**Section 5.**

Whenever a member of the unit is absent from school as a result of personal injury caused by an assault arising out of and in the course of his employment, he shall be paid his full salary for the period of such absence without having such absence charged to the annual sick leave or accumulated sick leave. Any amount of salary payable pursuant to this section shall be reduced by the amount of any Worker's Compensation award for temporary disability due to the said assault injury for the period for which such salary is paid. The Board shall have the right to have the member of the unit examined by a physician designated by the Board for the purpose of establishing the length of time during which the member of the unit is temporarily disabled from performing his duties; and, in the event that there is no adjudication in the appropriate Worker's Compensation proceeding for the period of temporary disability, the opinion of the said physician as to the said period shall control.

**Section 6.**

While the Board recognizes that it is obligated to investigate any and all complaints from parents and/or taxpayers, whether serious or frivolous, in regard to the professional conduct of Administrators, the Board also recognizes its obligation to do all in its power to protect the Administrator from undue harassment, embarrassment or public exposure.

When the Superintendent receives a complaint regarding the professional conduct of a member of the unit, the Superintendent shall urge the individual making the complaint to consult with the member in question. Should either the member or the maker of the complaint request, the Superintendent and/or Council representative may be present when the complaint is discussed.

Should the person making the complaint not be satisfied by his conference with the member of the unit, or should he elect not to have such a conference, he may submit a written and signed complaint to the Superintendent. Such complaint must be submitted within two weeks of the complainant's conference with the member (if applicable), or within two weeks of the time the complainant elects not to have such conference. Within at the most three days of receipt of the complaint, and preferably sooner, the Superintendent shall inform the member of the new complaint and attempt to investigate and resolve the complaint. After a reasonable period of time, not to exceed six weeks, the Superintendent shall notify the person making the complaint and the member in writing of his resolution of the complaint. Such resolution will be subject to the Grievance Procedure commencing at Step Two.

15

BBOE000044

## ARTICLE X

## BENEFIT PROGRAMS

**Section 1** – Group health insurance for active Administrators –

A.    (1)    Effective September 1, 2014, a qualified High Deductible Health Plan (HDHP) with a Health Savings Account (HSA):

In Network:

- Deductible (in and out of network) shall be $2,000 for single and $4,000 for family;

- The Board and the Administrator shall each contribute 50% of the deductible into the HSA;

- 100% in-network coverage after the deductible has been met;

- Prescription drugs administered by the Board's PBM are part of the HDHP and prescription costs apply to the deductible; and

- The Board shall pay the $5.00 monthly Administrative fee for each Administrator.

Out of Network:

- 70% out of network coverage after the deductible has been met; and

- The out-of-pocket maximum for single is $4,000 and the out-of-pocket maximum for family is $8,000.

Premium Cost Share:

*Administrators hired prior to June 30, 2014:*

- Effective September 1, 2014 the Administrator shall pay 23% of the HDHP (medical and Rx) premium;

- Effective July 1, 2015 the Administrator shall pay 24% of the HDHP (medical and Rx) premium;

16

BBOE000045

- Effective July 1, 2016 the Administrator shall pay 25% of the HDHP (medical and Rx) premium;

*Administrators hired on and/or after July 1, 2014:*

- Effective September 1, 2014 the Administrator shall pay 25% of the HDHP (medical and Rx) premium;

- Effective July 1, 2015 the Administrator shall pay 26% of the HDHP (medical and Rx) premium;

- 
- Effective July 1, 2016 the Administrator shall pay 27% of the HDHP (medical and Rx) premium;

Contribution Into the HSA:

The Board shall contribute its 50% share of the deductible into the HSA account as follows:

- 2014-2015:  The Board shall contribute its 50% share of the deductible on a bi-weekly basis;

- 2015-2016:  The Board shall contribute its 50% share of the deductible on a bi-weekly basis;

- 2016-2017:  The Board shall contribute its 50% share of the deductible on a bi-weekly basis;

(2)     OAP Plan as a voluntary option to the Administrator

An OAP health insurance plan as provided to the Administrators during the 2013-2014 school year with the following co-pays: Home and Office $30, Specialist $35, In-Patient Hospital $500, Outpatient Hospital $150, Urgent Care $75 and Emergency Room $150.  Out of network deductible is $2000/$4000 (individual/family), co-insurance is 70%/30% with an out of pocket maximum of $4000/$8000 (individual/family). The deductible counts toward the out of pocket maximum.

Administrators who choose the OAP Plan will pay the difference between the full cost of the OAP Plan (including the Rx) and the dollar amount the Board would contribute for the HDHP/HSA plan for that Administrator (HDHP/HSA premium minus Administrator cost share plus Board contribution to the deductible.)

B.     Prescription Drug Coverage shall provide for coverage under a prescription card program with an unlimited maximum per covered person

17

BBOE000046

per year subject to co-pays of $10 generic, $30 preferred name brand and $45 non-preferred name brand. The plan shall be subject to a one time mail order co-pay. Prescriptions shall be limited to a 30 day supply at retail. For refills beyond the third retail, mail order must be utilized or the co-payments and employee payment provided above shall double at retail. The prescription drug coverage set forth in this Section B is not available if the employee elects the HSA plan set forth in Section A.(1).

C.   A Cigna or Connecticut General dental plan for Administrators and their dependents.

D.   Life Insurance and Accidental Death and Dismemberment Benefits in the amount equal to twice the Administrator's salary at the time of death. (Unit member only – no spouse or dependents.)

The Board will comply with Federal Law obligations concerning active employees' eligibility to continue with the above referenced Board provided insurance as set forth herein, regardless of age or eligibility for Medicare.

**Section 2.**   Group Health Insurance (Retired Administrators)

A.   Upon retirement with at least ten (10) years continued certified service to the Bridgeport Public Schools, the retired Administrator may select to continue the health plan for them and their spouse under Section 1 above, as said coverage may be amended from time to time by paying 30% of the Board's varying cost for said coverage, and provided that continuation is permitted by State and Federal Law. Any Administrator who becomes a member of the BCAS bargaining Unit on or after September 1, 2008 who elects to continue coverage under this Section 2A upon retirement, may do so by bearing 50% of the Board's varying cost for such coverage (as same may be amended from time to time) and provided that continuation is permitted by State and Federal Law. Any Administrator who becomes a member of the BCAS bargaining Unit on or after July 1, 2014 who elects to continue coverage under this Section 2A. upon retirement, may do so by bearing 75% of the Board's varying cost for such coverage (as same may be amended from time to time) and provided that continuation is permitted by State and Federal Law.

B.   On retirement or other separation from employment, the Board does not contribute to the HSA. The retiree's premium cost share for the HDHP/HSA plan shall be calculated by reducing the overall premium by $1,000 (single) or $2,000 (administrator and spouse) and then applying the applicable percent contribution of the employee. For example, if the OAP plan costs $25,000 and the HDHP/HSA plan costs $20,000; and the retiree pays 30% of the Board's costs, then the amount that the retiree would pay for the administrator and spouse HDHP/HSA plan would be $20,000 less $2,000 ($18,000) times 30% for a total of $5,400(leaving a remainder of $12,600).

18

BBOE000047

If the retiree elected the OAP plan, the retiree's cost would be the difference between the total cost of the OAP plan less the Board's net dollar contribution towards the HDHP after reducing the cost of the HDHP by $1,000 (single) or $2,000 (spouse). In the example above, if the administrator elected the OAP plan, he or she would pay the $25,000 cost of the OAP plan less the $12,600 remainder; which equates to $12,400.

C.  Administrators who are currently enrolled in the OAP plan and who retire prior to September 1, 2014 may enroll in the HDHP/HSA plan during the open enrollment period to be effective September 1, 2014. Administrators retiring during the term of this Agreement may, during annual open enrollment periods, change from one plan to the other, with the understanding that they are subject to all the terms and conditions, premium cost shares, buy up costs, etc. of the plan into which they change.

D.  When such retired Administrator reaches age 65, and only if the retired administrator qualifies to participate in the Medicare TRB plan, the Board benefits set forth in Section A, above, shall cease and the retiree coverage shall be pursuant to the Medicare TRB plan set forth in Connecticut General Statute Section 10-183t for as long as the Medicare TRB plan (as the same may be amended from time to time) is offered to such qualifying retirees. In the event the TRB payment percentage as set forth in Connecticut General Statute Section 10-183t is less thAn two-thirds (2/3) of the premium cost, or in the event there is no longer a Medicare TRB plan offered to retirees, then the Board will pay the difference between the amount the TRB pays, if any, and what the TRB would have paid had the TRB percentage remained at two-thirds (2/3), but in no event shall the Board be liable for retiree health insurance costs for any plan in an amount exceeding seventy percent (70%) of the yearly single or yearly retiree and spouse paid by the Board for active employees. For retirees who become members of the BCAS bargaining unit on or after September 1, 2008, the Board shall have no such obligation to pay the difference should the State payout percentage be less than the above referenced two-thirds (2/3) of the premium costs.

**Section 3.**    Provided said continuation is permitted by the insurance carrier, survivors of a deceased Administrator  may continue the coverage referred to in Section 1 above, by bearing one hundred percent (100%) of the Board's varying cost for such coverage.

**Section 4.**    Upon the retirement of an Administrator who qualifies for a retirement allowance from the State Teachers' Retirement Board and who retires on or after September 1, 1994, the Board shall provide and pay for a life insurance and accidental death and dismemberment benefit in the amount of $10,000.

**Section 5.**    The Board of Education reserves the right to change insurance carriers  at any time or to self-insure in whole or in part at any time so long as it gives prior notice to BCAS and

BBOE000048

so long as the insurance coverage under the substitute policy or plan is substantially equivalent to or better than the coverage under the policy or plan then in effect. The Board shall provide the BCAS with all relevant information involving any change. If the parties are unable to informally resolve the matter within the following thirty (30) days, an arbitrator with expertise in the field of insurance shall be mutually selected or, if the parties cannot agree, shall be selected forthwith by the American Arbitration Association. The arbitrator must render a decision within thirty (30) days, if possible.

**Section 6.**     **Administrator Injured While Working**

A.     An Administrator who is injured while working and who qualifies for Workers Compensation shall be covered by such Worker's Compensation and all the benefits that accrue to such an award except as provided hereinafter.

B.     For six months following the date of injury that the Administrator is away from his work and is so covered by the Worker's Compensation, the Board of Education will pay the Administrator the difference between Worker's Compensation weekly award and his weekly pay. This payment shall be deducted from the accumulated sick leave.

C.     All injuries must be reported to the immediate superior immediately. Medical attention must be by a physician recognized by the Worker's Compensation Office, where reasonable.

**Section 7.**     **Section 125 Plan**

The Board of Education shall maintain Internal Revenue Code Section 125 pre-tax Medical expense and Child care accounts. The accounts also known as a Medical Reimbursement Account Plan ("RA Plan") and Dependent Child Care Reimbursement Account will have a minimum of $100.00 to a maximum of $5,000.00 per Plan Year for Health Reimbursement (including but not limited to uncovered medical or dental expenses). For dependent care, the plan will allow for a contribution of a minimum of $500.00 to a maximum of $5,000.00 per Plan Year. Such elections shall be optional for the employee. If there are costs for setup and administration and the Board elects not to assume same, the BCAS may elect the vendors and administrators at its own expense.

**ARTICLE XI**

**LEAVES OF ABSENCE**

**Section 1.**     **Sick Leave**

A.     Sick leave is to be used only for the purpose of compensating an Administrator who is unable to attend to his/her regular duties because of a bona fide illness or injury.

20

B.      Each Administrator in the Bridgeport School System shall be entitled to sick leave with full pay of 15 school days in each school year. In addition thereto, each Administrator may earn additional sick leave credit in each school year in the following manner:

> The Administrator shall earn two days of additional sick leave if he/she achieves perfect attendance in either the first half or the second half of his/her work year; and the Administrator shall earn a total of five (5) days if he/she has perfect attendance for the entire work year. The only exception to the perfect attendance requirement is approved absence (s) for professional development. Personal days and sick days shall count as absences in determining whether the Administrator had perfect attendance.

C.      All unused sick leave shall be accumulated from year to year without limitation, so long as the Administrator remains continuously in the employ of the Board. Administrators who have accumulated sick leave credit shall be entitled to retain that credit and to add to it as hereinbefore set forth.

D.      Once each year after the commencement of the school year, but not later than November 15, each Administrator shall receive a statement of his or her sick leave credit.

E.      In the case of prolonged illness beyond five consecutive days an Administrator may be asked to furnish a certificate stating the nature of the illness.

F.      Upon retirement or death, after a minimum of fifteen (15) years in the Bridgeport School System, an Administrator or his estate shall be entitled to a retirement award equal to an amount calculated by dividing the total accumulated sick leave days remaining by five (5) and then multiplying the resulting quotient (up to a maximum quotient of 100) by the Administrator's daily rate of pay during the last year of work. No payment will be made for partial days. The daily rate for all retiring Administrators will be calculated by dividing the yearly salary by two hundred (200).

**Section 2.**    **Death in the Family**

A.      In case of death in immediate family, the member of the unit shall be allowed full pay for three days' absence. (Immediate family shall be construed to mean: Father, mother, brother, sister, husband, wife, son, daughter, father-in-law, mother-in-law.)

B.      In case of death of a near relative, members of the unit shall be allowed one day's absence without deduction. (Near relative shall be construed to mean: Aunt,

BBOE000050

uncle, niece, nephew, grandfather, grandmother, grandchild, brother-in-law, sister-in-law, first cousin.)

C.     The above days are not to be deducted from the member of the unit's accumulated sick leave. If circumstances require additional time beyond that prescribed in the above, further extension will be at the discretion of the Superintendent.

**Section 3.      Illness In Family**

In case of sickness in the immediate family residing in the same household, Administrators may be allowed up to three (3) days' absence per year without loss of pay with the approval of the Superintendent. These are to be deducted first from the current year's sick leave and then from the Administrator's accumulated sick leave, if any.

**Section 4.      Personal Days**

A.     Each Administrator is allowed one personal day for necessary reasons. It is understood and agreed, however, that any Administrator taking this personal day will give forty-eight (48) hours advance notice to his immediate superior except in the case of an emergency, and it is further understood and agreed that this day shall not be used with another Administrator or Administrators for the purpose of concerted refusal to render services to the Board.

B.     Administrators may be allowed an additional three (3) days of absence per year for emergency and other necessary reasons with the prior approval of the Superintendent.

C.     These days shall not be granted prior to or immediately following holidays or vacations, or to extend the provisions of the sick leave article, unless requested in writing and approved by the Superintendent for good cause.

**Section 5.      Sabbatical Leave**

Desiring to reward professional performance and encourage independent research and achievement, the Board hereby initiates the policy of sabbatical leave for Administrators for approved scholarly programs which, in the opinion of the Board of Education, will enhance the Administrators' value and contribution upon return to the Bridgeport School System. Sabbaticals will be granted, subject to Board discretion, under the following conditions:

A.     Requests for sabbatical leave must be received by the Superintendent, in writing, in such form as may be required by the Superintendent no later than December 31st of the year preceding the school year in which the sabbatical leave was requested.

B.     Sabbaticals, if granted, will be for the duration of one school year or part thereof, as approved in advance by the Board.

22

C. An Administrator applying for sabbatical must have completed at least seven (7) consecutive full school years of service in the Bridgeport School System as an Administrator.

D. Administrators on sabbatical leave will be paid up to three-quarters of their annual salary rate. In the event the Administrator receives a stipend or other remuneration from other sources for the period of his sabbatical, the salary rate paid by the Board will be adjusted downward from three-quarters so that the stipend or other remuneration and the salary rate paid by the Board does not exceed the Administrator's full annual salary rate.

E. An Administrator granted a sabbatical shall agree, in writing, to return to administrative employment in the Bridgeport School System for two years in the event of a full year's sabbatical leave and further sign a note or other form acceptable to the Board agreeing to repay the Board the amount of compensation it extended the Administrator if the Administrator does not continue in employment for two years following the end of the sabbatical. Upon the Administrator's return to the Bridgeport School System, the Administrator shall be placed in the same or comparable administrative position in status and pay and on the appropriate step in the salary schedule as though such Administrator had not been on leave.

F. All rights, benefits and privileges of the Administrator on sabbatical leave shall continue in full force and effect during the leave.

G. Sabbaticals may be granted only with the approval of the Board of Education. Board approval may be denied on the basis of fiscal or other relevant reasons and considerations. Denial of a sabbatical by the Board shall not be subject to the grievance or arbitration procedure.

**Section 6.**   **Professional Leave**

A. The Board agrees that so long as no school or program would suffer from lack of proper supervision each unit member shall be encouraged to attend educational conferences and/or conventions with the prior written approval of the Superintendent.

B. The Superintendent may authorize reimbursement in whole or part for expenses incurred by the Administrator as a result of attendance at the approved educational conference or convention. Denial or granting of such reimbursement shall not be grievable.

23

BBOE000052

**Section 7.**      **Pregnancy Disability Leave**

A.      Any member of the bargaining unit who becomes disabled due to pregnancy or medical complications related to pregnancy and is unable to perform her normally assigned duties, shall submit a written statement from her physician indicating her present physical condition, the expected date of child birth, the nature of disability, the limitations which that disability imposes upon her ability to continue with her normally assigned duties, and the probable duration of that disability.

B.      Any bargaining unit members so disabled shall be granted paid sick leave to the extent accrued, after which time the employee shall be placed on unpaid sick leave, provided that either such leave shall be granted only for the duration of such pregnancy or pregnancy related disability.

C.      Any bargaining unit member disabled as a result of pregnancy or medical complications related to pregnancy shall be entitled to receive all compensation which has been accrued under the various provisions of this Agreement, and, upon returning to work, shall receive full credit for accumulated seniority, retirement, fringe benefits, and other service credits.

D.      Any bargaining unit employee previously disabled as a result of pregnancy or medical complications related to pregnancy must return to her position when she is physically able to perform her duties. The Board may require medical proof of any disability which it considers unduly long in duration.

**Section 8.**      **Child-Rearing Leave**

A.      Bargaining unit members shall be entitled, upon submission of a written request to the Superintendent of Schools, to an extended leave without pay or other benefits for the purposes of child-rearing, provided that such written notice must be tendered within three weeks from the date of giving birth, adopting, or otherwise fostering the child.

B.      Upon the granting of such leave by the Board all disability, insurance, retirement and fringe benefits, seniority and other service credits shall cease to be paid or further accumulated for the duration of said leave. Such Administrator shall be entitled to leave for the remainder of any school year in which the child is born, adopted, or fostered, and for up to one additional school year, provided that the Administrator shall only be entitled to return from a child-rearing leave on the first day of any given semester, provided further, that the Superintendent may in his/her discretion waive this return date limitation. For the purposes of this Section only, the school year shall be assumed to begin on September 1 and end on August 31. The Administrator's written request for such leave must include the

BBOE000053

duration thereof. The Administrator shall have no right to return prior to, or to extend, the duration of the leave as requested by the Administrator in writing.

C.    Upon the expiration of such leave, and in the event the leave does not extend beyond the school year in which the leave commences, the Administrator shall return to the same position which had been originally vacated by that Administrator, provided that there has not been any program change or reduction in the number of positions within his/her certification or school during the period of such leave. If any such change or reduction has occurred, the Administrator will be reinstated to the first vacant position for which he/she is eligible on the basis of qualifications, certification and seniority. In the event the leave is granted for an additional semester or school year the Administrator will return to the first vacant position for which he/she is eligible on the basis of qualifications, certification and seniority and shall have no prior claim to return to the same position which had been originally vacated by that Administrator.

D.    Administrators returning from child-rearing leave will be granted the same accumulated seniority, retirement benefits, fringe benefits, and other service credits which they possessed at the commencement of such leave. Further, they will return to the same step on the contract schedule as that which they occupied at the commencement of such leave if such leave commenced prior to February 1st of the school year. If such leave commenced after February 1st of the school year, they will be advanced one-step beyond the step they had obtained prior to the commencement of such leave, unless the Administrator was already at maximum.

**Section 9.**    **Jury Duty**

Any Administrator who is called for jury duty shall receive the necessary leave to fulfill this legal obligation. This leave shall not be deducted from sick leave or from personal days. The staff member shall receive a rate of pay equal to the difference between the professional salary and the jury fee. Despite the worthy purpose of jury duty, it is also recognized that the Board and Superintendent have the responsibilities of preserving quality education through Administrator presence and they will make necessary appeals to appropriate authority for Administrator excusal when necessary. Administrators shall actively cooperate with the Board and the Superintendent in those circumstances when requested to do so.

**ARTICLE XII**

**EARLY RETIREMENT**

The Board, in its absolute discretion, may make the following early retirement plan available effective September 1, 1987, or in its absolute discretion, in any succeeding year.

25

BBOE000054

**Section 1.**  **Eligibility**

    A.    Minimum Experience Requirement - at least fifteen (15) years of credited service in the Connecticut State Teachers' Retirement System, the last ten (10) of which shall have been served as an administrator in the Bridgeport Public School System. An individual cannot qualify for this program if retiring on a leave *of* absence.

    B.    Ages 50 to 59, with twenty (20) years *of* Connecticut service.

    C.    Ages 60 to 65, with fifteen (15) years *of* Connecticut service.

**Section 2.**  **Implementation**

Notification of one's intention to retire must be filed prior to February 1 for a retirement effective July 1.

    A.    **Retirement** - shall be construed to mean, "eligibility for retirement benefits and allowances under the rules of the Connecticut State Teachers' Retirement System."

    B.    **Age** - shall be the actual age in years at the time the Connecticut State Teachers' Retirement benefits and allowances become effective.

    C.    **Years of Credit** - shall be that service recognized by the Connecticut State Teachers' Retirement System. The maximum number of years of Connecticut credited experience to be used in the formula shall be thirty (30) years.

    D.    **Last Salary** - shall mean the amount earned in the last full school year of Bridgeport employment. This is the annual salary as defined by the Connecticut Teachers' Retirement System. "Annual Salary" means that amount paid by a board of education to an Administrator, holding a certificate issued by the State board of education, during any school year as specified in the contract of employment or in the annual salary agreement, which amount shall include any sum paid to the Administrator for services which involve a teaching, administrative or supervisory function, but shall not include any sum paid to the Administrator for extra duty assignments, coaching, unused sick leave, unused vacation or terminal pay.

    E.    **Maximum Last Salary** - Maximum Last Salary when utilizing the Formula for Implementation shall not exceed the applicant's respective degree column and step of the Administrators' Salary Schedule.

26

BBOE000055

F.    **Formula for Implementation** - the incentive payments shall be determined by the following formula: Percentage Factor x Years of Credit x Maximum Last Salary - Yearly Payment.

G.    **Formula Factor and Number of Yearly Payments** - the percentage factor and number of yearly payments will be determined by the following schedule:

| Age | Percentage Factor | Payment Years |
|-----|-------------------|---------------|
| 50-60 | 1-1/2% | 4 years |
| 61 | 1-1/4% | 4 years |
| 62 | 1 % | 4 years |
| 63 | 3/4% | 3 years |
| 64 | 1/2% | 2 years |
| 65 | 1 /4% | 1 year |

H.    **Yearly Payment** - will range from one (1) to four (4) years as set forth in the "Payment Years" in Section G. Those entitled to multiple year payments i.e. 2, 3 or 4 years) will receive each yearly payment on a yearly basis, as set forth below. No lump sum payments exceeding the amount of any, yearly payment will be allowed; e.g., if the retiree is between 50 and 60 years of age, and thus entitled to four (4) yearly payments, he must take the early retirement benefit in four (4) yearly installments. He may not take the total benefit in one lump sum.

I.    **Dates of Payment** - when filing the application for early retirement, the employee will have the option of receiving the yearly payment in the month of July following retirement, or the option of receiving the yearly payment in the first month of the following calendar year.

J.    **Survivorship Payment** - payments go to designated beneficiary in case of death. Such beneficiary will be noted on the application at the time an individual files for the incentive plan. Should the beneficiary desire to adjust receipt of payment to the other alternative noted above, he shall be granted such an option.

## ARTICLE XIII

### SALARIES

**Section 1.**

Salaries will be paid in accordance with Appendices A, B and C.

27

BBOE000056

**Section 2.**

Any member who is promoted will not take a decrease in pay if the new position begins at a lower pay, but instead will be placed on that step of the higher group which provides a pay increase.

Promotions from Group IV to Group III or above shall also be placed on that step of the higher group which provides a pay increase of at least $2,000 above the most recent previous annual salary for the Administrator.  Promotions from Group IV to Group III or above shall also be placed on that step of the higher group which provides a pay increase of at least $2,000 above the most recent previous annual salary for the Administrator.  If a new 12 month Assistant Principal position is established after September 1, 2014, or if a vacancy in a 12 month position becomes available, the newly hired administrator who is appointed; or an existing administrator who is promoted to that Assistant Principal position shall be placed in Group IIIA at Step One or, in the case of a promotion, at the Step at which the administrator will receive a raise of at least $2,000 over the administrator's most recent previous salary.

**Section 3.**

The following longevity payments shall be made to those Administrators who have accumulated the years of teaching and administrative service in the Bridgeport School System set forth below as of June 30 in the previous school year. Said payment shall be made in the last pay period in December.

| | | |
|---|---|---|
| 16 - 19 years | - | $1,100. |
| 20 or more years | - | $1,300. |
| 25 or more years | - | $1,400. |
| 30 or more years | - | $1,500. |

## ARTICLE XIV

## PAYROLL DEDUCTIONS

All of the following deductions are subject to the capabilities of the computer.

A.     In addition to those payroll deductions required by law or pursuant to the terms of this Agreement, the following agencies are eligible for payroll deduction. All requests for deductions must be in writing on approved authorization form.

B.     A list of deductions is as follows:

Washington National Insurance

B.C.A.S. Local #46

28

Tax Sheltered Annuity Plans (5)

U. S. Savings Bonds

Bridgeport - Fairfield Credit Union

C.  **Dues Deductions**

(1)  The Council shall notify the Board in writing as to the current rate of its membership dues. Any Association which shall change the rate of its membership dues shall give the Board sixty (60) days written notice prior to the effective date of such change.

(2)  Deductions referred to in Section 1 above shall be made on the first pay day of each month. The Board shall not be required to honor for any month's deduction any authorizations that are delivered to it later than two weeks prior to the distribution of the payroll from which the deductions are to be made.

(3)  No later than September 30 of each year, the Board shall provide the Council with a list of unit members who have voluntarily authorized the Board to deduct dues for any of the Associations named in Section 1 above. The Board shall make available to the Council a monthly list.

(4)  Payroll authorizations for Council dues shall be in full force and effect for so long as an Administrator continues in the employ of the Board but no longer than the duration of this Agreement. The Council agrees to indemnify, defend and hold the Board harmless for any action that might arise against the Board for compliance with the dues deduction provisions of this Agreement.

D.  **Teacher Retirement Deductions**

Deductions for Teacher Retirements shall be deducted from the first twenty (20) checks of the school year, in as nearly equal amounts as possible.

E.  Beginning July 1, 2014, all salary notification and agreements may be completed and transmitted to employees electronically, in which case paper copies will no longer be provided.

F.  All administrators must enroll in the direct deposit program.  They will receive notification of direct deposit and all information in the direct deposit will be delivered to the administrator electronically.

BBOE000058

## ARTICLE XV

## SUPERVISOR FILES

Official supervisor files, wherever kept, and whether kept in paper or electronic format, shall be maintained under the following conditions:

A.   Administrators shall have the opportunity to review and discuss their observation and evaluation with their Supervisors. Administrators shall have the right to receive copies of their individual reports. The supervisor must acknowledge that he/she has read such material by affixing his/her signature on the actual copy to be filed, with the understanding that such signature merely signifies that he/she has read the material to be filed and does not necessarily indicate agreement with its content.

B.   The supervisor shall have the right to answer any material filed, and the answer shall be attached to the file copy.

C.   Upon appropriate request by the supervisor, he shall be permitted to examine his files.

D.   The supervisor shall be permitted to reproduce any material in his files within five calendar days of his request at his own expense.

D. Material will be removed from the files when a supervisor's claim that it is inaccurate or unfair is sustained.

## ARTICLE XVI

## STAFFING

Effective September 1, 1978, a minimum of one full-time clerk will be assigned to each school in the System.

## ARTICLE XVII

## FEDERALLY FUNDED POSITIONS

A.   Any new position created through federal funds which the Board desires to fill shall be adequately posted within each school at least ten (10) days prior to the appointment of this position. Administrators who desire consideration for jobs created through the use of federal funds may submit a letter of application to the Human Resources Director for such posted position within the ten (10) day posting period.

30

BBOE000059

B.     The District and/or Human Resources website or email will as appropriate post information of all newly created positions and vacancies and the job qualifications for each as well as the appointment of same.

C.     Individuals in federally funded positions have the same tenure rights as all other Administrators.

D.     An opportunity shall be provided for one representative chosen by the Council to participate in an advisory role in the initial planning of any school committee engaged in formulation of programs or projects for the utilization of state or federal funds.

## ARTICLE XVIII

## RIGHTS OF COUNCIL

A.     Upon written request, the Board agrees to furnish to the Council any available public records and information, including data covering the financial resources of the school system and tentative budgetary requirements and allocations adopted by the Board, which the Council may deem to be of assistance in negotiating a successor to this Agreement, or in processing any grievance or appeal. Such public information shall be provided to the Council within ten days of the receipt of such written request unless otherwise prohibited by law or court order.

B.     A copy of all master contracts between the Board of Education and all organizations having collective bargaining agreements with the Board of Education shall be given to the Council upon ratification of said contracts.

C.     The Council President shall be furnished a copy of the Board Agenda at least one (1) calendar day prior to public Board meetings, or otherwise advised when the agenda is known. Council members desiring copies of the Agenda may secure them at the Central Administration Building.

D.     The Board will supply the minutes of all official Board meetings (other than those taken in executive session) to the President of the Council as soon as such minutes are made available to the Board members.

BBOE000060

## ARTICLE XIX

## FAIR PRACTICES

### Section I.

In the event the duties or responsibilities of any position in the bargaining unit are substantially decreased or increased, or otherwise substantially altered, the Superintendent or designee will upon request engage in negotiations with the Council as to the impact.

### Section 2.

The salary for any new administrative position created by the Board within the bargaining unit shall be negotiated with the Council.

## ARTICLE XX

## NO STRIKE

No Administrator shall engage in a strike or concerted refusal to render services. The Council shall not cause, counsel, sponsor, condone or participate in any strike or concerted refusal to render services.

## ARTICLE XXI

## GENERAL SAVINGS CLAUSE

If any provisions of this Agreement or any application thereof to any Administrator or group of Administrators is found contrary to law, then such provision or application will be invalid and subsisting only to the extent permitted by law; however, all other provisions or applications will continue in full force and effect.

## ARTICLE XXII

## IMPACT STATEMENT

If the work year for Administrators is increased by the discretion of the Board beyond that currently in effect, the Administrators shall be compensated at a per diem rate based upon the Administrators' individual salaries; provided, however, that this section does not apply to work year increases by virtue of State statute, State regulation, or the action of the State Board of Education or the Commissioner of Education.

32

BBOE000061

## ARTICLE XXIII

### PAST PRACTICES

In light of the restructure of the salary schedule and placement of job titles therein, the parties agree that no past practices dealing with reclassification of job titles or placement of job titles or any other practice regarding the appropriate salary schedule or group placement of any job in the bargaining unit shall survive the effective date of the 1999-2002 collective bargaining agreement.

## ARTICLE XXIV

### DURATION

The provisions of this Agreement shall be in full force and effect as of September 1, 2014 and shall continue to remain in full force and effect until August 31, 2017.  Negotiations for successor Agreements shall be in accordance with statutory requirements.

In agreement to the foregoing, the parties have affixed their signatures as set forth below.

BRIDGEPORT BOARD OF EDUCATION

BRIDGEPORT COUNCIL OF
ADMINISTRATORS AND SUPERVISORS

BY: _____

BY: _____

Date: _____

Date: _____

**THIS COLLECTIVE BARGAINING AGREEMENT WAS SUBMITTED AS A
STIPULATED INTEREST ARBITRATION AWARD ON JANUARY 28, 2014**

BBOE000062

Appendix A

2014-2015

| GROUP | STEPS | M.A. | 6TH YEAR | PhD |
|-------|-------|------|----------|-----|
| I | 1 | $124,501 | $133,221 | $135,931 |
| | 2 | $126,355 | $135,076 | $137,785 |
| | 3 | $128,182 | $136,929 | $139,640 |
| | 4 | $130,045 | $138,811 | $141,476 |
| | 5 | $131,907 | $140,669 | $143,340 |
| II | 1 | $116,986 | $125,212 | $128,117 |
| | 2 | $119,398 | $127,702 | $130,610 |
| | 3 | $121,860 | $130,241 | $133,146 |
| | 4 | $124,377 | $132,832 | $135,737 |
| | 5 | $126,948 | $135,489 | $138,414 |
| III | 1 | $114,578 | $122,805 | $125,711 |
| | 2 | $116,992 | $125,295 | $128,203 |
| | 3 | $119,453 | $127,834 | $130,740 |
| | 4 | $121,972 | $130,426 | $133,329 |
| | 5 | $124,539 | $133,082 | $136,005 |
| IIIA | 1 | $111,578 | $119,805 | $122,711 |
| | 2 | $113,992 | $122,295 | $125,203 |
| | 3 | $116,453 | $124,834 | $127,740 |
| | 4 | $118,972 | $127,426 | $130,329 |
| | 5 | $121,539 | $130,082 | $133,005 |
| IV | 1 | $97,364 | $104,759 | $107,316 |
| | 2 | $100,239 | $107,649 | $110,289 |
| | 3 | $103,197 | $110,620 | $113,343 |
| | 4 | $106,241 | $113,675 | $116,482 |
| | 5 | $110,019 | $117,436 | $120,325 |

There shall be no step movement for the 2014-2015 year.

BBOE000063

**Appendix B**

**2015-2016**

| GROUP | STEPS | M.A. | 6TH YEAR | PhD |
|-------|-------|------|---------------------|-----|
| I     | 1     | $127,240 | $136,152 | $138,922 |
|       | 2     | $129,135 | $138,047 | $140,816 |
|       | 3     | $131,002 | $139,941 | $142,712 |
|       | 4     | $132,906 | $141,865 | $144,589 |
|       | 5     | $134,809 | $143,764 | $146,493 |
| II    | 1     | $119,560 | $127,967 | $130,935 |
|       | 2     | $122,025 | $130,511 | $133,483 |
|       | 3     | $124,541 | $133,106 | $136,075 |
|       | 4     | $127,114 | $135,755 | $138,723 |
|       | 5     | $129,741 | $138,469 | $141,459 |
| III   | 1     | $117,099 | $125,506 | $128,477 |
|       | 2     | $119,566 | $128,052 | $131,023 |
|       | 3     | $122,081 | $130,646 | $133,617 |
|       | 4     | $124,655 | $133,295 | $136,262 |
|       | 5     | $127,279 | $136,010 | $138,997 |
| IIIA  | 1     | $114,099 | $122,506 | $125,477 |
|       | 2     | $116,566 | $125,052 | $128,023 |
|       | 3     | $119,081 | $127,646 | $130,617 |
|       | 4     | $121,655 | $130,295 | $133,262 |
|       | 5     | $124,279 | $133,010 | $135,997 |
| IV    | 1     | $99,506  | $107,064 | $109,677 |
|       | 2     | $102,444 | $110,018 | $112,715 |
|       | 3     | $105,468 | $113,054 | $115,836 |
|       | 4     | $108,578 | $116,176 | $119,045 |
|       | 5     | $112,440 | $120,020 | $122,972 |

There shall be no step movement for the 2015-2016 year.

BBOE000064

**Appendix C**

**2016-2017**

| GROUP | STEPS | M.A. | 6TH YEAR | PhD |
|-------|-------|------|----------|-----|
| I | 1 | $129,658 | $138,739 | $141,561 |
|   | 2 | $131,588 | $140,670 | $143,492 |
|   | 3 | $133,491 | $142,600 | $145,424 |
|   | 4 | $135,432 | $144,560 | $147,336 |
|   | 5 | $137,371 | $146,495 | $149,276 |
| II | 1 | $121,832 | $130,398 | $133,423 |
|   | 2 | $124,343 | $132,991 | $136,019 |
|   | 3 | $126,907 | $135,635 | $138,661 |
|   | 4 | $129,529 | $138,334 | $141,359 |
|   | 5 | $132,206 | $141,100 | $144,146 |
| III | 1 | $119,324 | $127,891 | $130,918 |
|   | 2 | $121,838 | $130,485 | $133,513 |
|   | 3 | $124,401 | $133,128 | $136,155 |
|   | 4 | $127,023 | $135,828 | $138,851 |
|   | 5 | $129,697 | $138,594 | $141,638 |
| IIIA | 1 | $116,324 | $124,891 | $127,918 |
|   | 2 | $118,838 | $127,485 | $130,513 |
|   | 3 | $121,401 | $130,128 | $133,155 |
|   | 4 | $124,023 | $132,828 | $135,851 |
|   | 5 | $126,697 | $135,594 | $138,638 |
| IV | 1 | $101,397 | $109,098 | $111,761 |
|   | 2 | $104,390 | $112,108 | $114,857 |
|   | 3 | $107,472 | $115,202 | $118,037 |
|   | 4 | $110,641 | $118,383 | $121,307 |
|   | 5 | $114,576 | $122,300 | $125,309 |

There shall be no step movement for the 2016-2017 year.

BBOE000065

BBOE000066

In the Matter of Binding Arbitration

Between

*Bridgeport BOE*

-and-

*Bridgeport Admn*

:
:
:
:
:
:
:
:
:
:

Subject _____
(Last Best Offer Binding Arbitration)

OATH FOR
ARBITRATORS REPRESENTING THE INTERESTS OF THE EXCLUSIVE BARGAINING
REPRESENTATIVES OF CERTIFIED EMPLOYEES

STATE OF CONNECTICUT

COUNTY OF FAIRFIELD

:
:
:

ss: Bridgeport

The undersigned, representing the interests of exclusive bargaining representatives of certified employees, being duly sworn, hereby accepts the appointment as arbitrator representing the above-noted interests and will faithfully and fairly hear and examine the matters in controversy between the above-noted parties, in accordance with Section 10-153f of the Connecticut General Statutes, and will make a just award according to the best of my understanding.

Signed: _____
Arbitrator representing the interests of exclusive
bargaining representatives of certified employees

Subscribed and sworn to before me this _____ day of January , 2014.

_____
Signature and Title

In the Matter of Binding Arbitration

      Between

_Bridgeport_ Board of Education

     -and-

_Bridgeport Co. y Sups + Adms_

Subject _____
(Last Best Offer Binding Arbitration)

## OATH FOR
## ARBITRATORS REPRESENTING THE INTERESTS OF THE LOCAL AND REGIONAL BOARDS OF EDUCATION

STATE OF CONNECTICUT

COUNTY OF _Fairfield_

ss: _Bridgeport_

The undersigned, representing the interests of the local and regional boards of education, being duly sworn, hereby accepts the appointment as arbitrator representing the above-noted interests and will faithfully and fairly hear and examine the matters in controversy between the above-noted parties, in accordance with Section 10-153f of the Connecticut General Statutes, and will make a just award according to the best of my understanding.

Signed: _____
Arbitrator representing the interests of the local and regional boards of education

Subscribed and sworn to before me this ____ day of _January_, 20_14_.

_____
**Signature and Title**