UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BARBARA JOHN,  :
　:
　　Plaintiff,  :
　:
v.  : Case No. 3:14-cv-1484 (RNC)
　:
BRIDGEPORT BOARD OF EDUCATION, :
　:
　　Defendant.  :

RULING AND ORDER

Plaintiff Barbara John, an African-American female, claims that the Bridgeport Board of Education ("BBOE" or "the Board"), the only remaining defendant in this action, failed to promote her to the position of Director of Athletics, Health and Physical Education ("the Director" or "the position") because of her race and sex in violation of Title VII, 42 U.S.C. § 2000 et seq. The Board has moved for summary judgment and an award of attorney's fees. Because plaintiff has presented sufficient evidence from which a reasonable factfinder could conclude that her race and gender were motivating factors in the Board's decision, the Board's motions are denied.

I. Background

The following facts are undisputed or, if disputed, are supported by the summary judgment record viewed in a light most favorable to the plaintiff.[1] In 2012, the Board posted a job

---

[1] Plaintiff has filed a "Local Rule 56(A)1, Statement of Undisputed Facts" (ECF No. 156-4). The statement fails to comply with Local Rule 56, which requires parties opposing a motion for summary judgment to file a Local Rule 56(a)2 Statement of Facts

opening for the position of Director.  The advertisement listed the following "requirements": master's degree in health, physical education or a "related field"; successful experience as an athletic coach; five years of experience teaching health and/or physical education; Connecticut certifications in immediate supervision, health, physical education, and coaching; and the ability to effectively implement and manage budgets and personnel.  Plaintiff applied for the position as did James Denton and Neil Kavey, both white males.  All three were interviewed for the position.  Kavey was ultimately selected.

At the time the candidates applied, all three were current BBOE employees.  Denton was the acting Director.  Plaintiff had worked for BBOE for forty-two years as a health and physical education teacher.  She had a master's degree in physical education and many years of coaching experience beginning in the late 1970s and continuing through 2012.  She had all the required

---

in Opposition to Summary Judgment, including "a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and or objecting to the fact."  D. Conn. L. Civ. R. 56(2)(i).  The factual assertions in the defendant's Rule 56(a)1 Statement may therefore be deemed admitted.  See id. at 56(1); see also Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute."). However, plaintiff has vigorously disputed certain facts and the parties have had ample opportunity to develop a record regarding those disputed factual issues.  In these circumstances, the interest in resolving issues on the merits is better served by examining the record in a light most favorable to the plaintiff to determine whether she has raised a triable issue rather than treating the defendant's assertions as if they had been admitted.

certifications except for health, and also had certifications in first aid and swimming. Kavey had worked for BBOE for twenty-seven years. He was a physical education teacher from 1986 to 1994 and a school counselor from 1994 to 2012. He had a bachelor's degree in physical education and a master's degree in school counseling. He had the required certifications except for health and coaching.[2] Kavey's resume stated that he had coached high school and college sports teams from 1976 to 1986.[3]

The candidates were interviewed by Chief Administrative Officer Dr. Sandra Kase and Deputy Chief Academic Officer Teresa Carroll.[4] According to the Board, the interviewers asked a series of pre-determined questions, including the following: "With district budgets becoming more and more constrained, how would you manage your resources to provide equity and access to

---

[2] Kavey later obtained a coaching certificate after the Connecticut Department of Education made it mandatory for all athletic directors in 2013. The parties dispute whether Kavey was certified in physical education in 2012. However, the record establishes that he was certified at that time. See Def.'s 2nd Reply (ECF No. 135).

[3] Plaintiff disputes whether Kavey actually had coaching experience on the ground that the schools listed on his resume have no records verifying his employment. The Board responds that the schools were not required to keep records. In addition, it points to a newspaper article from 1981 that includes a picture of Kavey and references two of his coaching positions.

[4] Dr. Kase began working for BBOE earlier in 2012. See Kase's Depo., at 10 (ECF No. 157-3). Carroll worked in various positions for BBOE starting in the early 1990s. She was Assistant Superintendent from 2006 to 2012, when she became Deputy Chief Academic Officer. See Carroll's Depo., at 8-9 (ECF No. 87-3).

sports for all students." After the interviews, Kase recommended Kavey to Superintendent Paul Vallas.[5] Vallas met with Kavey and, based on Kase's recommendation, offered him the position. Vallas was not aware that plaintiff had applied for the position. The Board approved Vallas's decision.

Because Vallas relied on Kase's recommendation of Kavey, and was unaware of plaintiff's application, Kase served as the de facto decisionmaker.[6] This case was filed in October 2014. Neither party obtained a statement from Kase until January 2018. At her deposition, Kase testified that Kavey impressed her with "his vision, and his ideas for conducting or for implementing District-wide Physical Education Program in the context of limited resources." She said that plaintiff did not exhibit "the same level of -- of either vision or suggestions for implementing a District-wide Physical Education and Health Program." She also testified that Denton had failed to demonstrate he was able to manage district resources during his tenure as acting Director. Prior to Kase's deposition, the Board cited only Carroll's deposition testimony in support of its decision to hire Kavey

---

[5] Vallas was appointed Interim Superintendent in 2011.

[6] See Bickerstaff v. Vassar Coll., 196 F.3d 435, 450 (2d Cir. 1999) ("We recognize that the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision in violation of Title VII. . . . This is true even absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the promotion process." (citation omitted)).

over plaintiff. Carroll testified that she gave a three out of five rating to plaintiff and Denton, and a four out of five rating to Kavey, citing his "leadership voice."

Plaintiff contends that Kase's decision to recommend Kavey was motivated by discrimination based on race and gender. Plaintiff testified at her deposition that she was not aware of any racially or sexually derogatory comments made by BBOE administrators or board members, including Kase. However, she had more seniority than Kavey and, in her view, was objectively better qualified for the position of Director, and therefore should have gotten the promotion under the contract between BBOE and the teachers' union. At the time, the contract stated: "[V]acanc[ies] shall be filled on the basis of fitness for the vacant post, provided, however that where two or more applicants are substantially equal in fitness, the applicant with the greatest amount of seniority in the Bridgeport School System shall be given preference."[7] Responding to Kase's deposition testimony, plaintiff states that the interviewers never asked her about managing resources and, had they asked, she would have explained that she had several relevant experiences managing budgets.[8]

---

[7] Plaintiff has stated that she did not file a grievance with the union related to the Director position because she did not trust the union.

[8] In response to an earlier motion for summary judgment filed by BBOE, plaintiff included the list of interview questions. See Pl.'s 1st Resp., Ex. 3 (ECF No. 98-6). Prior to

Plaintiff has also testified that she began applying for administrative positions in 2006 and was rejected each time in favor of a white male. In 2009, plaintiff brought suit against BBOE for failing to promote her to the position of Director claiming discrimination on the basis of age, race, and sex. See John v. Bridgeport, 09-cv-378(VLB), 2011 WL 1106708 (D. Conn. Mar. 22, 2011). The case was dismissed on summary judgment. The present suit arises from BBOE's failure to promote her to the position in 2012.[9]

II. Legal Standard

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To avoid summary judgment, the non-moving party must point to evidence that would permit a jury to return a verdict in his or her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). In determining whether the moving party is entitled to judgment as a matter of law, a court must review all the evidence in the record. In doing so, however, the court must view the evidence in the light most favorable to the opposing party. Id. at 255. Under this standard, all evidence

---

Kase's deposition in January 2018, however, neither party drew attention to the questions asked during the interviews.

[9] The 2009 suit involved the position of Director of Physical Education and Athletics. In 2012, the Board added a Health component but many of the duties and responsibilities of the position remained the same.

supporting the position of the opposing party must be credited, with any ambiguities resolved and all reasonable inferences drawn in favor of that party.  Importantly, although it is necessary to review the record as a whole, evidence supporting the position of the moving party must be disregarded unless a jury would have to credit the evidence because it comes from a disinterested source and is uncontradicted and unimpeached.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice & Procedure § 2529, at 300 (2d ed. 1995)).  It is essential that care be taken in applying this standard in order to preserve and protect the Seventh Amendment right to trial by jury, which is undermined by excessive use of summary judgment.  See A. Miller, The Pretrial Rush To Judgment: Are The Litigation Explosion," "Liability Crisis," And Efficiency Cliches Eroding Our Day In Court And Jury Trial Commitments?, 78 N.Y.U. L. Rev. 982 (2003).

   III. Discussion

   Title VII discrimination claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  First, the plaintiff must meet the "minimal" burden of establishing a prima facie case by showing: "(1) that [she] falls within the protected group, (2) that [she] applied for a position for which [s]he was qualified, (3) that [she] was subject to an adverse employment decision and (4) that the adverse employment decision was made under circumstances

giving rise to an inference of unlawful discrimination." <u>Byrnie v. Town of Cromwell, Bd. Of Educ.</u>, 243 F.3d 93, 101 (2d Cir. 2001) (citing <u>McDonnell Douglas</u>, 411 U.S. at 802). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason for the employment decision." <u>Id.</u> at 102. If the defendant meets this burden, the burden shifts back to the plaintiff to "show that the proffered reason was pretextual and that, more likely than not, the true reason was the illegal discrimination that the plaintiff alleged." <u>Scaria v. Rubin</u>, 117 F.3d 652, 654 (2d Cir. 1997). "At summary judgment in an employment discrimination case, a court should examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." <u>Byrnie</u>, 243 F.3d at 102. To meet her ultimate burden, plaintiff need only show that "an improper consideration was 'a motivating factor' for [the] adverse employment decision." <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 174 (2009) (quoting 42 U.S.C. § 2000e-2(m)).

BBOE contends that plaintiff has failed to meet her initial burden of presenting a prima facie case.[10] It is well-established, however, that when the position in question is given

---

[10] BBOE does not dispute that plaintiff was qualified for the position. Though plaintiff did not meet all the requirements listed in the job posting, neither did Kavey, and both were interviewed for the position.

to someone outside the protected class, that fact alone is sufficient to give rise to an inference of discrimination at the prima facie stage. See Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). Thus, plaintiff has met her initial burden.

BBOE has offered a legitimate, nondiscriminatory reason for the challenged action: Kase thought Kavey performed better than plaintiff during the interviews.[11] At Kase's deposition, she cited the interviews as the dispositive factor in her decision to recommend Kavey. Carroll's contemporaneous notes also point to Kavey's superior performance in the interview. Thus, the burden shifts back to the plaintiff to produce evidence permitting an inference that the proffered reason is pretextual.

The pretext inquiry involves examining the "strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case." Reeves, 530 U.S. at 148–49. In some cases, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Id. at 148. When,

---

[11] See Byrnie, 243 F.3d at 102 (defendant's statement that person hired "performed better than [plaintiff] during the candidate interviews and thus seemed, based on subjective criteria, the better qualified candidate" is legitimate, nondiscriminatory reason).

as here, the plaintiff offers evidence rebutting the defendant's proffered reason but has not offered direct evidence of discrimination,[12] the question is whether a "trier of fact c[ould] reasonably infer from the falsity of the explanation that [Kase] is dissembling to cover up a discriminatory purpose." Id. I find that a combination of factors permits this inference here.

First, on paper, plaintiff appears to be a better fit for the Director position. She had worked continuously as a physical education teacher, health teacher and coach for over forty years; Kavey stopped coaching in the mid-1980s, had not taught physical education since the mid-1990s, and had no experience teaching health.[13] The discrepancy in qualifications between plaintiff

---

[12] Plaintiff does claim that she had been overlooked in favor of white males for similar positions in the past, which could show a discriminatory motive under certain circumstances. See McDonnell Douglas, 411 U.S. at 804-05 (noting that "petitioner's treatment of respondent during his prior term of employment" is relevant to pretext inquiry and that "statistics as to petitioner's employment policy and practice may be helpful to a determination of whether petitioner's refusal to rehire respondent in this case conformed to a general pattern of discrimination against blacks"). But plaintiff offers few specifics about these other positions besides the 2009 case, which she lost on the merits. See John, 2011 WL 1106708, at *14. Moreover, the probative value of this evidence is limited because all the parties involved in the hiring decision in 2012 entered their positions in 2011 or 2012; she has not established, or even asserted, that any of them were involved in previous hiring decisions.

[13] Though I conclude that a jury could find plaintiff was objectively better qualified for the position, her assertions that BBOE administrators willfully failed to "investigate" Kavey and conspired to put him in the position despite his lack of qualifications are speculative. Her contention that Kavey was not qualified for the position because he did not have the

and Kavey is not so great that "no reasonable person, in the exercise of impartial judgment, could have chosen [Kavey] over the plaintiff for the job in question," but it does detract from the credibility of BBOE's proffered reason. See Byrnie, 243 F.3d at 104-06 (disparity in qualifications probative even if not dispositive); see also Weiss v. JPMorgan Chase & Co., 332 F. App'x 659, 664 (2d Cir. 2009) (stating that courts "must give particular scrutiny to 'subjective evaluation[s],' because (1) 'any defendant can respond to a discrimination charge with a claim of some subjective preference or prerogative and, if such assertions are accepted, prevail in virtually every case' and (2) a discriminatory consideration such as [race or gender] could play into the 'formation of subjective impressions.'" (quoting Byrnie, 243 F.3d at 104-06)).

Second, the contract between BBOE and the teacher's union gave preference to the more senior candidate when two candidates were "substantially equal in fitness." Plaintiff was the more

---

requisite certifications is belied by the fact that plaintiff also did not have all the requisite certifications. And her contention that Kavey's resume was fabricated is refuted by evidence offered by BBOE and, in any event, largely irrelevant: even if it was fabricated, there is no reason to believe that anyone at BBOE (where Kavey had worked for twenty-seven years) knew or should have known that it was. See Pippin v. Town of Vernon, 660 F. Supp. 2d 354, 366 (D. Conn. 2009) (rejecting claim where plaintiff "proffered no evidence that at the time the [defendant] made the decision . . . any [defendant] employee . . . knew of the [alleged] misrepresentations or intentionally avoided learning about them by not checking . . . references [of the person hired] before offering him the position").

senior candidate and, as already noted, appears on paper to be *better* qualified for the position than Kavey. This kind of evidence can be probative of pretext. See Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 97 (2d Cir. 1999) (deviation from seniority-based promotion policy sufficient to support inference of discrimination for purposes of prima facie case, though not enough to establish pretext).[14]

Third, although BBOE has represented from the start of the litigation that the hiring decision was made based on the candidate interviews, BBOE did not proffer Kase's stated reason for her decision until recently. BBOE has not shifted its justifications to a degree that suggests a coverup, see Leibowitz v. Cornell Univ., 584 F.3d 487, 503 n.6 (2d Cir. 2009) (cannot infer pretext from shifting justifications where justifications were not "identical" but all related to "alleged financial burden of renewing plaintiff's contract"), but the failure to provide a "clear and specific" reason does raise concern. See Byrnie, 243

---

[14] Plaintiff has not shown how the seniority provision in the union contract was interpreted and applied prior to 2012, which is relevant to determining whether and to what extent the Board may have deviated from established practice. Cf. DeMarco v. Holy Cross High Sch., 4 F.3d 166, 171 (2d Cir. 1993) (stating that "pretext inquiry . . . normally focuses upon factual questions such as whether the asserted reason for the challenged action comports with the defendant's policies and rules [and] *whether the rule applied to the plaintiff has been applied uniformly*" (emphasis added)). Even so, the Board's apparent failure to give the plaintiff the benefit of the seniority provision provides some support for a finding of pretext.

F.3d at 105 ("[A]n 'employer's explanation of its reasons must be clear and specific' in order to 'afford the employee a full and fair opportunity to demonstrate pretext.'" (quoting Meiri v. Dacon, 759 F.2d 989, 996-97 (2d Cir. 1985)).

Fourth, and perhaps most important, crediting plaintiff's account, the interviewers did not ask her about budgeting and managing resources, despite Kase's statement that the issue was critical to her decision to recommend Kavey. Though courts may not "second-guess an employer's hiring standards, the reasons for its employment decision, including its alleged reliance on such standards, are subject to scrutiny under Title VII." Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 313 (2d Cir. 1997). The failure to follow established procedures for making hiring and firing decisions can be probative of pretext, especially when the ultimate decision is based on subjective evaluations. See Medeiros v. Pratt & Whitney Power Sys., Inc., 272 F. App'x 78, 80 (2d Cir. 2008) (decisionmaker's failure to follow "Employee Assessment Guidelines" prior to discharging plaintiff supports finding of pretext). Moreover, the inconsistency between Kase's and plaintiff's versions of events calls into question Kase's credibility. See id.

The combined effect of this evidence, viewed most favorably to the plaintiff, sufficiently undermines the Board's proffered explanation to permit a reasonable inference that the explanation

is pretextual. Because the record viewed most favorably to the plaintiff supports a finding of pretext, summary judgment may not be granted. Under Second Circuit case law, "only occasionally will a prima facie case plus pretext fall short of the burden a plaintiff carries to reach a jury on the ultimate question of discrimination." Zimmermann, 251 F.3d at 382 (quotations omitted)); see D'Cunha v. Genovese/Eckerd Corp., 479 F.3d 193, 196 (2d Cir. 2007) (prima facie case of age discrimination plus evidence calling decisionmaker's credibility into question is sufficient); Byrnie, 243 F.3d at 104-06 (combination of disparity in qualifications and failure to follow established hiring procedures is sufficient); Medeiros, 272 F. App'x at 80 ("aggregate evidence of pretext" is sufficient); Weiss, 332 F. App'x at 664 (jury could infer discrimination where plaintiff appeared better qualified than his replacement, employer offered shifting justifications for termination, and employer failed to follow normal decisionmaking process); Zimmermann, 251 F.3d at 383 (jury could infer discrimination from evidence undermining employer's stated reason of "poor performance," fact that plaintiff was fired along with another woman at workplace where only three of fourteen positions were held by women, and absence of other nondiscriminatory reason in record).

There are cases "where, although the plaintiff has established a prima facie case and set forth sufficient evidence

to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." Reeves, 530 U.S. at 148. But this is not a case where the "plaintiff [has] created only a weak issue of fact as to whether the employer's reason [i]s untrue and there [i]s uncontroverted independent evidence that no discrimination had occurred." See id. Nor is this a case where "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision." See id. Rather, the evidence in the summary judgment record, viewed most favorably to the plaintiff, would permit a jury to return a verdict in her favor.

IV. Conclusion

Accordingly, the motion for summary judgment is hereby denied. Because attorney's fees are only available for "prevailing part[ies]," 42 U.S.C. § 2000e-5(k), an award is not appropriate.

So ordered this 4th day of April 2018.

/s/
Robert N. Chatigny
United States District Judge